William B. BRELAND, Appellant,

v.

UNITED STATES of America,
Appellee.

UNITED STATES of America,
Appellant,

v.

William B. BRELAND, Appellee.

No. 19997.

United States Court of Appeals
Fifth Circuit.

Aug. 8, 1963.

On Motion for Clarification
Sept. 17, 1963.

William E. Logan, Gulfport, Miss., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Robert E. Hauberg, U. S. Atty., E. R. Holmes, Jr., Asst. U. S. Atty., Jackson, Miss., Alec A. Pandaleon, Atty., Dept. of Justice, Washington, D. C., Joseph M. Howard, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before PHILLIPS,* WISDOM and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

This case involves cross-appeals from a judgment holding the taxpayer liable for income tax and penalties resulting from a failure to file income tax returns. In the cross-appeal the Government complains of the holding that no fraud was proven for the years 1952, 1953 and 1954, and a denial of fraud penalties for failure to file returns and declarations of estimated tax. The taxpayer challenges the lower court's findings as to taxable income for the years 1952, 1953, 1954 and 1955, and the assessment of a fraud penalty for failure to file a return for the year 1955.

On November 21, 1958, the District Directors' 90 day letter was received by taxpayer informing him of income tax liability as follows:

|  | TAX | PENALTY |
|---|---|---|
| Taxable year ended 12/31/52 | $3,068.16 | $2,779.07 |
| Taxable year ended 12/31/53 | 1,792.98 | 1,618.65 |
| Taxable year ended 12/31/54 | 1,373.26 | 889.07 |
| Taxable year ended 12/31/55 | 1,080.44 | 566.95 |
| TOTALS | $7,314.84 | $5,853.75 |

On June 23, 1959, taxpayer paid the assessment for the year 1955, then subsequently was informed by another 90 day letter that there was an additional

* Of the Tenth Circuit, sitting by designation.

$238.36 due for the year 1955.[1] Taxpayer paid this additional sum, and then filed a claim for refund on the ground that he had no taxable income in 1955; and therefore, owed no tax and was guilty of no fraud in failing to file a return. The claim was rejected and taxpayer filed suit. The Government counterclaimed for the above mentioned taxes and penalties due for the years 1952, 1953 and 1954. The lower court found the taxes as set out in the 90 day letters were due and owing, but expressly found that there was no fraud involved in the evasion of the taxes except for the year 1955.

The case presents the following basic questions: Was the District Court justified in finding that the District Director made correct determinations that there was taxable income for the years in question; if so, was the amount determined to be due reasonable under the facts; and were penalties imposed by the District Director authorized? For answers to these questions we must look to the record.

The taxpayer testified that he had not been employed during any of the years involved and had no taxable income from any source. He claims that when he was discharged from the Marine Corps in the year 1945, he had a cash hoard of $15,000.00 which he had won by gambling; that he obtained some funds from his second wife Romaine; and that he borrowed $3,000.00 from a friend. These funds are claimed to be the chief source of money used for living expenses. As to the cash hoard, the taxpayer stated it had not been deposited or invested in any assets, tangible or intangible, and that it had been "hid". His former wife, Pauline Morgan, to whom he was married in early 1949 and with whom he lived for almost a year, denied the existence of the cash hoard, or at least any knowledge of its existence; and she detailed financial difficulties while she and the taxpayer were living together, during which period she was employed on a part-time basis. At times, she stated, she and the taxpayer did not have sufficient food to eat. They purchased a home in Kentucky on which they made a downpayment of $500.00, accumulated through savings derived from their separate employments. The parties were divorced and the taxpayer conveyed his interest in the home located in Kentucky to his ex-wife and she paid him the sum of $250.00 cash. Four other witnesses, who testified on behalf of the taxpayer and who claimed to be his close friends, denied any knowledge of the existence of the cash hoard.

Appellant's case was investigated by Government Agent Haynes, a graduate accountant who had practiced accounting privately for a short period, and had been in the employ of Internal Revenue Service for a period of 6 years. He thoroughly and carefully investigated the affairs of the taxpayer, which included interviews with the taxpayer and his acquaintances, visits to taxpayer's home, and close scrutiny of facts relating to the standard of living of the taxpayer for the period involved. The taxpayer made a downpayment on a $10,500.00 home in the year 1952 in the amount of $3,500.00. Of that sum, $2,500.00 was paid in cash; and he obtained a loan of $1,000.00 which he repaid. He owned 2 automobiles part of the time; a 26 foot Chris-Craft motorboat purchased in 1952 for $2,500.00 and sold in 1953 for $2,000.00; played golf; spent considerable time fishing, and some time hunting, and gambling.

He married again in December 1951, or shortly thereafter. His second wife's name was Romaine Knight, and for a period of over six months after marriage they rented an apartment at a monthly rental of $70.00. There were mortgage payments on the home after it was purchased. In addition, taxpayer owned a racing car which initially cost approximately $175.00 and he participated in racing in addition to his other sporting activities. During the critical period he

---

1. This second 90 day letter increasing the 1955 assessment was the result of the Director's determination that taxpayer could not claim his wife from whom he was separated in September of 1955, and divorced in 1956, as a dependent.

also purchased a lot for $200.00. His second wife, Romaine, lived with him during all of the years involved, but left about September of the year 1955. Both she and the taxpayer smoked, and at times indulged in drinking alcoholic beverages. The home occupied by them was a 3 bedroom house, "nicely furnished" and well maintained. At times his boat was kept at a harbor for which rent was paid.

In June of the year 1952, before the home was purchased, taxpayer made application for an FHA loan in which there was a financial statement reflecting a bank deposit in the amount of $1,500.00; savings bonds in the amount of $1,000.00; the 2 automobiles mentioned at a value of $3,000.00; the lot at a value of $200.00; and additional personal property at a value of $4,000.00. The financial statement shows no liabilities whatever. On this form taxpayer's annual base income was listed at $6,000.00 and a question mark was placed in the bracket calling for overtime or other employment earnings. Annual fixed charges listed Federal and State income tax at $500.00 a year, and monthly rental payments for the past year were shown to be $70.00. The testimony of Agent Haynes and the taxpayer conclusively prove that the financial statement contained in the application was a deliberate fabrication in order to obtain the loan and was false in many respects.

In estimating the taxpayer's income, the District Director determined the sum of $5,000.00 per year to be a reasonable estimate of taxpayer's living expenses. The taxpayer strongly asserts that he has disproved the District Director's determination of his income. In addition to his contentions as to the cash hoard; a rather indefinite statement relative to funds possessed by his second wife; and the loan from his friend, he centers a vigorous attack upon the $5,000.00 determination of annual living expenses. To support his contentions, he used the testimony of 4 friends with whom he had spent a great deal of time in pursuit of the sports above mentioned and other activities. His friends estimated his living expenses at figures ranging from $15.00 to $40.00 per week, although each of them disclaimed any particular or accurate knowledge or information as to the actual living expenses of the taxpayer. Their testimony was based on a most casual observation. Each of these 4 friends testified that taxpayer always paid his share of expenses on hunting and fishing trips. One of them stated that he was not a "penny pincher". These friends also testified that the home of the taxpayer was well furnished and presented a neat and respectable appearance; one of them stating that the taxpayer's home was better than his own.

The circumstances of the $3,000.00 loan are rather unusual to say the least. Agent Haynes testified that taxpayer first contended, in an interview prior to trial, that he had borrowed $5,000.00 from his friend. All the testimony from the taxpayer and his friend however, fixed the amount at $3,000.00. The friend, Bonham, who is alleged to have made the $3,000.00 loan, and who testified in a vague way as to the living standard of the taxpayer, concurred in the testimony of the taxpayer that the $3,000.00 loan was made in cash and not by check. Bonham further testified that although he was familiar with notes in general use, the note he had from the taxpayer was not of that type, but was on something "like tablet paper"; that the "note" was lost in high water, but no duplicate or other evidence of the existence of the debt was ever requested and no record of it established; no payment was ever made on the debt; no security was taken; and at the time the loan was made, the taxpayer had no job. In addition to the loan mentioned, both taxpayer and Bonham also testified that Bonham loaned taxpayer funds to make payment on his delinquent taxes. Bonham "estimated" the living expenses of the taxpayer to be $30.00 a week during the period in question and while taxpayer was living with his second wife, but he testified that in the year 1956 taxpayer commenced working for him at a salary of $65.00 a week.

Although taxpayer and his wife were not living together in 1956 and were divorced, no payment was made on the $3,000.00 debt. The taxpayer maintained no records whatever either as to income, living expenses, or other expenditures. He claimed the determination of $5,000.00 was too high, but stated that he was unable to say what his actual living expenses amounted to except that he rather loosely estimated such expenses to be $1,200.00 per year. Taxpayer worked part of the time after discharge from the Marine Corps in 1945 and until 1952, a period of 6 years, during which time he purchased a home in Kentucky and was married and divorced. During four of the years from 1945 to 1955 he claimed that he did not work, and had no income whatever, but that he lived on the cash hoard, the loan mentioned, and some funds of his second wife, although the latter amount was not stated with any certainty. During the 10 year period, he had purchased 2 homes, married 2 wives, obtained 2 divorces, owned a $2,500.00 boat, at one time owned 2 automobiles, and lived on the standard indicated by the activities herein outlined. His second wife left him in September 1955, but a divorce was not obtained until September 1956. He claimed an exemption for the second wife as a married man, but he does not know whether she filed a return for the year 1955 or whether she was working or had other income after she left him.

■■ It is the duty of the taxpayer to keep books and records of his income for the purpose of determining the correct amount of income taxes due and payable, and if he fails to do so " * * * the computation shall be made in accordance with such methods as in the opinion of the Commissioner does clearly reflect the income." Internal Revenue Code of 1939, 26 U.S.C.A., 1952 Ed., § 41; Internal Revenue Code of 1954, 26 U.S.C.A., 1958 Ed., § 446. Our system of taxation of income is grounded upon the basic principle of individual self-assessment in which taxpayers are required to keep records, file returns and compute the tax.

When the taxpayer fails to obey the requirements of the law and maintains no books or records and has no method of accounting, some reasonable basis must be used, and the Commissioner must resort to various sources of information to determine such income and tax liability. In such circumstances the reasonable reconstruction of income by the Commissioner will be presumed correct, with the burden on the taxpayer to disprove such computation even though crude. Agnellino v. Commissioner, 3 Cir.1962, 302 F.2d 797; Merritt v. Commissioner, 5 Cir.1962, 301 F.2d 484; Thomas v. Commissioner, 6 Cir.1955, 223 F.2d 83; Law of Fed. Income Taxation, Mertens, 1961, Vol. 2, § 12.12, p. 39 et seq.

■ In the circumstances of this case we agree with the conclusion reached by the trial court that the computations of the District Director should be sustained and the evidence offered by the taxpayer as to the cash hoard, the loan, his living expenses, and other relevant factors, is not worthy of credit or serious consideration. The mere fact that a witness makes a statement, especially in the circumstances here present, does not require an acceptance of such a statement as creditable evidence. Credibility is for the trier of the facts, and we agree with the District Court as to the facts mentioned. See Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61 (1945); Uncasville Mfg. Co. v. Commissioner, 2 Cir. 1932, 55 F.2d 893; Wigmore on Evidence, 3rd Ed., Vol. 7, p. 260, § 2034.

■ We must now consider the aspects of fraud involved in the case. The evidence herein outlined substantially relates to all of the years involved. We fail to see any controlling distinction between the evidence relating to the year 1955 and that relating to the years 1952, 1953 and 1954. Both appellant and the Government state in their briefs that if fraud is found to be present or absent as to the year 1955, the same conclusion would likewise be applicable to the other years. We agree with that conclusion. The burden of proving fraud is on the

Government. Fraud is not presumed, and proof of it must be made by clear and convincing evidence, showing actual and intentional wrongdoing on the part of the taxpayer, with a specific intent to evade the tax. Goldberg v. C.I.R., 5 Cir. 1956, 239 F.2d 316; Mitchell v. C.I.R., 5 Cir.1941, 118 F.2d 308; Carter v. Campbell, 5 Cir.1959, 264 F.2d 930; Drieborg v. Commissioner, 6 Cir.1955, 225 F.2d 216. We conclude therefore, that the Government did not carry the burden of proof of fraud, and there was not sufficient evidence as to any of the years involved to sustain a finding of fraud.

We further conclude that the taxpayer was not entitled to the $600.00 exemption claimed for his wife Romaine in the year 1955. The record does disclose that a divorce was not obtained until September 1956, but it also clearly shows that taxpayer and his wife were not living together during the last 3 months of 1955, but had separated under circumstances which led to a divorce. Taxpayer testified that he had no knowledge as to whether his wife was working, had received earned or other income, or whether she filed a separate return. 26 U.S.C.A. § 151(b) allows the exemption in question when a separate return is filed by the taxpayer only if the spouse "has no gross income". The record does not contain evidence to show that the taxpayer was entitled to the exemption claimed. The Commissioner determined that he was not. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933).

In computing tax liability for the year 1952, the Commissioner included the expenditure of $2,500.00 for the mentioned boat in determining the amount of income received by the taxpayer. This boat was sold for $2,000.00 in 1953, but that fact was not taken into consideration by the Commissioner in determining the income of the taxpayer for that year. Failure to do so was error and would result in greater tax liability. The income ascertained by the Commissioner for the year 1953 must be reduced by the $2,000.00 obtained from the sale of the boat in question. In oral argument the Government conceded this fact.

The judgment of the District Court is reversed and the case is remanded for proceedings not inconsistent with this opinion.

On Motion for Clarification of Opinion.

PER CURIAM.

The Government has filed a motion for clarification of the opinion of this Court heretofore rendered. The motion is well taken. Our opinion of August 8, 1963, is modified with respect to an addition to the tax imposed by the Commissioner under § 294(d)(1)(A) of the 1939 Revenue Code [1] for failure to file declarations of estimated tax in 1952, 1953 and 1954; and with respect to an addition to the tax under § 291(a) of the 1939 Revenue Code [2] for failure to file income tax returns for the years 1952 and 1953. The trial court held that the taxpayer's failure to file income tax returns or declarations of estimated tax for the years involved was due to reasonable cause and not wilful neglect. There are no facts in the record to support a finding that such failure was due to reasonable cause. Breland made no attempt to prove any reasonable cause for failure to file returns or declarations of estimated tax, except to say that he had no income. The trial court found that he did have income for the years involved and we agree with that finding.

The burden is on the taxpayer to prove reasonable cause for failing to file declarations of estimated tax under § 294(d)(1)(A) of the 1939 Revenue Code; and for failing to file income tax returns under § 291(a) of the 1939 Revenue Code. The taxpayer failed to carry the burden imposed upon him. We conclude that the trial court was clearly erroneous in finding that reasonable cause for failure to file as provided by said sections was proved by the taxpayer. Henningsen v. Commissioner of Int. Rev., 4

---

1. 26 U.S.C.A. (1952 Ed.) § 294.

2. 26 U.S.C.A. (1952 Ed.) § 291.

Cir., 1957, 243 F.2d 954; Home Builders Lumber Co. v. Commissioner of Int. Rev., 5 Cir., 1948, 165 F.2d 1009; Paymer v. Commissioner of Int. Rev., 2 Cir., 1945, 150 F.2d 334; and Mertens Law of Fed. Inc. Tax, Vol. 10, §§ 55.21, 55.23.

Except as here modified, the opinion of the Court dated August 8, 1963 remains unchanged.