**H. R. GIBSON, Sr., et al., Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 22430.**

United States Court of Appeals
Fifth Circuit.

May 11, 1966.

Robert Edwin Davis, Wentworth T. Durant, Dallas, Tex., Ronald M. Mankoff, Dallas, Tex., for appellants.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Melvin Diggs, U. S. Atty., Dallas, Tex., Robert N. Anderson, Donald W. Williamson, Jr., Attys., Dept. of Justice, Washington, D. C., Richard M. Roberts, Acting Asst. Atty. Gen., Gilbert E. Andrews, Atty., Dept. of Justice, Washington, D. C., Martha Joe Stroud, Asst. U. S. Atty., of counsel, for appellee.

Before HUTCHESON and RIVES, Circuit Judges, and FULTON, District Judge.

HUTCHESON, Circuit Judge:

This appeal is from a judgment allowing in part and denying in part appellant Gibson's refund claim for federal retailer's excise taxes allegedly overpaid. Gibson urges that it was entitled to the entire amount of refund claimed; contends that it proved this in the court below; and requests that we now allow the refund in full. We agree with the findings and conclusions of the district court and accordingly affirm its decision.

This controversy involves ten persons and entities, all engaged in the wholesale and retail merchandising business, and all related to H. R. Gibson, Sr., the prin-

cipal officer and leader of the organization.[1] In 1958 retail operations were added to Gibson's already established and successful wholesale business. Retail sales soon accounted for most of Gibson's business. During the taxable years under consideration,[2] a portion of Gibson's retail sales consisted of jewelry, cosmetics, and luggage. These items, if sold at retail, are subject to the federal retailer's excise tax.[3] For each of the years in question, Gibson prepared and filed an excise tax return reporting the retail sales of these items, and paid the taxes reported thereon.

During 1960 an Internal Revenue agent purchased several items subject to the excise tax from Gibson's Dallas store. Although this purchase was not made to determine whether the store was collecting the tax, the agent observed that the tax was not separately stated or collected, nor was it recorded in his presence. A similar result was observed in a subsequent purchase at the Dallas store.

In August, 1962, the Internal Revenue Service began an examination of the Gibson organization. This revealed the method whereby Gibson determined its retail sales of taxable merchandise, and the amount of taxes, to be as follows: In all stores except the Dallas store, cash registers had different keys for classifying sales of merchandise as "taxable" or "nontaxable". The registers in the Dallas store did not have separate "taxable" keys; there sales subject to the excise tax were recorded in a book kept beside the register. Daily or monthly totals of sales, including sales of taxable merchandise, were sent to Gibson's central accounting office. There the taxable sales were checked and then transcribed to an "excise tax journal". Following this the various summaries and reports received from the stores, and from which the journal records were obtained, were discarded. Only the excise tax journal was available for Government inspection; it reflected taxable sales, and excise taxes due, in accordance with the returns previously prepared and filed by Gibson.

From the excise tax journal and other records retained by Gibson, the Government was unable to determine the accuracy of the excise taxes actually reported and paid. Subsidiary records were not available to verify the journal entries. Gibson's general business records were of little assistance in this connection.[4] Because of these circumstances, the Government reconstructed certain fundamental accounting records to determine Gibson's true excise tax liability. Based upon its initial examination, the Government assessed additional excise taxes for the periods in question of $134,706.59, plus penalties and interest.

Pursuant to the district court's suggestion during pretrial, the parties jointly conducted a re-examination of Gibson's records. The parties reached agreement as to the amount of purchases of taxable merchandise for 1961. During 1961 there were no unaccounted for inventory

1. This refund suit was initiated by H. R. Gibson, Sr., d/b/a Gibson Products Company. Nine other persons and entities were subsequently joined as plaintiffs. These additional parties are individuals related to H. R. Gibson, Sr., or are partnerships or corporations owned by H. R. Gibson, Sr., or members of his family. All of these parties-plaintiffs, now appellants, will be collectively denominated "Gibson".

2. Deficiency assessments were made for the taxable periods (quarters) from January 1, 1959, to and including June 30, 1962.

3. Int.Rev.Code of 1954 Sections 4001, 4021, 4031.

4. These records show only the total amount of sales (both wholesale and retail) of all merchandise and sales of taxable items. Inventory was taken only by dollar amounts without identifying the goods in any manner that would enable the Revenue agents to determine what portion thereof was subject to tax. The reported amounts of taxable items sold at retail could not be verified from this information.

buildups;[5] thus 1961 purchases of merchandise could reasonably be used to determine 1961 sales of taxable merchandise. Using the agreed figure for 1961 purchases, the Government employed the "percentage of error" method to estimate Gibson's actual excise tax liability. An average markup of twenty-five per cent of cost, determined from observing Gibson's operations, was added to 1961 taxable purchases to arrive at 1961 taxable sales. Ten per cent of this figure[6] represented the Government's estimate of the actual 1961 excise tax liability. This then was compared with the excise taxes reported and paid by Gibson in 1961; the taxes so estimated were found to be 217 per cent greater than the taxes reported and paid. The figure of 217 per cent—the "percentage of error"— was then applied to the reported and paid taxes for the other years in dispute. Thus computed, the additional tax liability owed by Gibson was $73,302.03. In arriving at this, all tenuous matters were resolved in favor of Gibson.[7]

Accepting this computation, the Government reduced its claim of additional taxes to $73,302.03, thereby decreasing its previous claim by $61,404.56. However the Government assessed additional penalties under Code Sections 6651 and 6656 of $20,632.30 and $817.13, respectively.

The district court, to which the case was submitted without a jury, concluded that Gibson's excise tax journal was, by itself, insufficient to determine Gibson's correct excise tax liability; that the accuracy of the journal was seriously impugned by the Government's evidence and computations; and that Gibson failed to prove that the taxes actually reported and paid were correct. The court ruled that the Government's estimate was "reasonably fair, and designed to afford substantial accuracy," but nevertheless made adjustments as follows: (1) 1961 purchases were decreased (a) by ten per cent to adjust for wholesale sales (since such are not subject to the excise tax) and (b) by seven per cent to adjust for inter-store transfers; and (2) the markup applied to 1961 purchases to determine sales was decreased from twenty-five per cent to twenty per cent. The penalties assessed and counterclaimed under Code Section 6651 were denied; those under Code Section 6656 were sustained after they were reduced to reflect the court's adjustments. As thus determined, Gibson's excise tax deficiency was $45,610.72. Gibson was allowed to recover the additional amounts originally assessed and collected.

Unsatisfied with this decision, Gibson asserts that it has shown it is entitled to the refund claimed and asks that we uphold its refund claim in full. Gibson's argument in support of this position is two-fold: first, that its excise tax journal conclusively establishes the correct amount of its excise tax liability for the periods in question; and second, that even if its journal is not conclusive, the Government's evidence and computations are not sufficient to refute the correctness of its journal. These contentions are patently unsound and must be rejected.

■ Section 6001, Int.Rev.Code of 1954, imposes on all taxpayers an obligation to "keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary or his delegate may from time to time prescribe". Pursuant to this mandate, 26 C.F.R. Appendix to Sub-

---

5. In 1961 there were no substantial store enlargements that would have required a large infusion of additional inventory. In the case of newly opened stores during that year, the opening inventory was not included in "purchases".

6. The excise tax imposed by Code Sections 4001, 4021, and 4031 is ten per cent of the price for which the item is sold.

7. Among the matters resolved in favor of Gibson were: (1) purchases were reduced by two per cent to reflect the discount obtained upon early payment, although Gibson actually obtained this discount on less than half of its purchases; and (2) no "bonus" or "free" goods received by Gibson were taken into account.

chapter D Section 320.72 provides that taxpayers shall maintain "accurate records, including * * * accounts of all transactions. * * * The records shall contain sufficient information to enable the Commissioner to determine whether the correct amount of tax has been paid. * * *" Thus the taxpayer's records must provide sufficient information to permit verification of the taxpayer's reported tax liability; if the taxpayer's records are inaccurate or incomplete, the Commissioner may look to other information to determine if the tax payable has been correctly returned. Breland v. United States, 323 F.2d 492, 496 (5th Cir. 1963); Merritt v. Commissioner of Internal Revenue, 301 F.2d 484, 486 (5th Cir. 1962) and authorities there cited. Cf. 2 Mertens, Law of Fed. Income Taxation Section 12.12 (1961).

■■ That the taxpayer's own records are not conclusive of his tax liability is evidenced by the Supreme Court's language in Holland v. United States, 348 U.S. 121, 132, 75 S.Ct. 127, 99 L.Ed. 150 (1954): "To protect the revenue from those who do not 'render true accounts', the Government must be free to use all legal evidence available to it in determining whether the story told by the taxpayer's books accurately reflects his financial history."[8] Accord, Vloutis v. United States, 219 F.2d 782, 786–787 (5th Cir. 1955). The fact that Gibson's excise tax journal was *admissible* evidence of its excise tax liability, or that similar records have been relied upon to sustain a taxpayer's claim for refund,[9] does not prevent the Government from refuting, or the district court from refusing to accept, the validity of such records. See Kurnick v. Commissioner of Internal Revenue, 232 F.2d 678, 680 (6th Cir. 1956); Maroosis v. Smyth, 187 F.2d 228, 231 (9th Cir. 1951), cert. denied, 342 U.S. 814, 72 S.Ct. 28, 96 L.Ed. 615 (1951).

■ Nor can we agree that the Government's evidence and computations are insufficient to sustain the district court's judgment. In a tax refund suit, the claimant must show not only that the Government's determination is incorrect, but also the facts from which a correct determination of his tax liability can be made. Helvering v. Taylor, 293 U.S. 507, 514, 55 S.Ct. 287, 79 L.Ed. 623 (1935); David v. Phinney, 350 F.2d 371, 377 (5th Cir. 1965), cert. denied, 382 U.S. 983, 86 S.Ct. 560, 15 L.Ed.2d 473 (1966); Compton v. United States, 334 F.2d 212, 216 (4th Cir. 1964); Wiles v. United States, 312 F.2d 574, 577 (10th Cir. 1962); Veino v. Fahs, 257 F.2d 364, 367 (5th Cir. 1958); Decker v. Korth, 219 F.2d 732, 737 (10th Cir. 1955), cert. denied, 350 U.S. 830, 76 S.Ct. 61, 100 L.Ed. 740 (1955); Maroosis v. Smyth, supra, 187 F.2d at 231–232; 10 Mertens, op. cit. supra Section 58A.35 (1964).[10] Gibson's case fails in both these respects. In the court below the Government introduced substantial evidence indicating that Gibson's excise tax journal figures were highly improbable.[11] Of course

8. Involved in Holland was the Government's use of the so-called "net worth" method of estimating the taxpayers' taxable income. There the taxpayers' books were apparently adequate, and the taxpayers argued that use of indirect and secondary information should be restricted to situations in which the taxpayer has no books or where his books are inadequate. Although the Government was unable to show any specific false entries in the taxpayers' books nevertheless the Court upheld the disregard of those books where indirect evidence indicated their incorrectness.

9. See, e. g., H. T. Rainwater, 23 T.C. 450 (1954).

10. See also United States v. Lease, 346 F.2d 696, 698–701 (2d Cir. 1965); Breland v. United States, 323 F.2d 492, 496 (5th Cir. 1963); Alvary v. United States, 302 F.2d 790, 795 (2d Cir. 1962); Bernstein v. Commissioner of Internal Revenue, 267 F.2d 879, 881 (5th Cir. 1959); United States v. Harris, 216 F.2d 690 (5th Cir. 1954).

11. In Finding of Fact No. 10 the district court detailed its views based on this evidence:

[T]he accuracy or reliability of the excise tax journal was impugned by the following:

(1) On the basis of the agreed purchases of taxable merchandise in 1961,

Gibson also introduced much testimony supporting its journal. From the conflicting testimony the district court concluded that Gibson's records were inadequate for a correct determination of its excise tax liability, and that Gibson had failed to establish its correct liability. These conclusions are wholly consistent with the record evidence in this case, and certainly are not "clearly erroneous" under Fed.R.Civ.P. 52(a). Gibson's self-serving statements in support of its journal are not controlling and do not compel a contrary result. See Pinder v. United States, 330 F.2d 119, 124 (5th Cir. 1964); Mendelson v. Commissioner of Internal Revenue, 305 F.2d 519, 521 (7th Cir. 1962), cert. denied, 371 U.S. 877, 83 S.Ct. 149, 9 L.Ed.2d 114 (1962); Commissioner of Internal Revenue v. Smith, 285 F.2d 91, 96 (5th Cir. 1960); Archer v. Commissioner of Internal Revenue, 227 F.2d 270, 273 (5th Cir. 1955).[12]

■ The district court approved the Government's "percentage of error" method of computation, and held that this computation, as adjusted by the court, resulted in an accurate estimate of Gibson's true excise tax liability. We are in complete agreement with this conclusion. See Decker v. Korth, supra; Maroosis v. Smyth, supra, 187 F.2d at 232; Halle v. Commissioner of Internal Revenue, 175 F.2d 500, 502–503 (2nd Cir. 1949), cert. denied, 338 U.S. 949, 70 S. Ct. 485, 94 L.Ed. 586 (1950). To the extent Gibson has demonstrated error in the Government's computations, it has been given liberal relief by the adjustments of the district court. See Miller

v. United States, 296 F.2d 457, 460 (7th Cir. 1961); Goldberg v. Commissioner of Internal Revenue, 239 F.2d 316, 319 (5th Cir. 1956); Archer v. Commissioner of Internal Revenue, supra.

Affirmed.

Plaintiffs were reporting less than half thereof as retail sales subject to the excise tax.

(2) Using the ratio of the Estimated Taxable Sales (as computed by the Government) for 1961 to the Gross Sales of Merchandise for 1961. * * * Plaintiffs would owe an additional tax of $89,302.03.

(3) Using a ratio of the Excise Tax by Plaintiffs for 1963 to the Gross Sales of merchandise for 1963 * * * Plaintiffs would owe an additional tax of $68,573.03.

(4) Using the agreed purchases of taxable merchandise in 1961 and no markup, Plaintiffs would owe an additional tax of $47,934.07.

12. See also Urban Redevelopment Corp. v. Commissioner of Internal Revenue, 294 F.2d 328, 332 (4th Cir. 1961); Carter v. Commissioner of Internal Revenue, 257 F.2d 595, 599 (5th Cir. 1958); Anderson v. Commissioner of Internal Revenue, 250 F.2d 242, 247 (5th Cir. 1957), cert. denied, 356 U.S. 950, 78 S.Ct. 915, 2 L.Ed.2d 844 (1958).