CHARLES W. KOLB, Sr., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent BIG THREE AUTO BROKERS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kolb v. Commissioner
Docket Nos. 7332-73, 7333-73.
United States Tax Court
T.C. Memo 1975-272; 1975 Tax Ct. Memo LEXIS 101; 34 T.C.M. (CCH) 1171; T.C.M. (RIA) 750272; August 27, 1975, Filed Charles W. Kolb, Sr., pro se. Thomas M. Cryan, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined the following deficiencies in income tax and additions to tax in these consolidated cases: Additions to Tax Docket Nos.
Years
Deficiencies
Section 6653(a) [1]
Section 6651(a)
7332-73
1969
$4,997.00
$249.85
1970
2,996.49
149.82
$ 149.82
1971
3,574.02
178.70
7333-73
1970
2,521.40
126.07
1971
3,415.12
170.76
With respect to Charles W. Kolb, Sr., (hereinafter *103 referred to as "petitioner"), the issues presented for decision are, as follows: (1) Whether petitioner received unreported commission income from Big Three Auto Brokers, Inc., during the taxable year 1969, in the amount of $8,139.00. (2) Whether petitioner received dividends from Keymo Motors Corporation during the taxable years 1969 and 1970 in the amounts of $2,046.16 and $768.00, respectively. (3) Whether petitioner received dividends from Big Three Auto Brokers, Inc., in the taxable years 1969, 1970, and 1971 in the amounts of $6,153.33, $8,429.71, and $13,952.97, respectively. (4) Whether petitioner is entitled to deduct amounts paid on account of the principal and interest owing on a promissory note payable to the First National Bank of Homestead, Florida. (5) Whether the individual income tax returns filed by petitioner for the taxable years 1969 to 1971, inclusive, constituted joint returns of the petitioner and his spouse, or, in the alternative, whether petitioner is entitled to claim a personal exemption for said spouse. (6) Whether petitioner is liable for the addition to the tax under section 6653(a) for the taxable years 1969, 1970, and 1971, and the addition *104 to the tax under section 6651(a) for the taxable year 1970. With respect to petitioner Big Three Auto Brokers, Inc. (hereinafter referred to as "Big Three"), the respondent disallowed expenses in the amount of $10,658.89 for the taxable year ended June 30, 1970, and in the amount of $15,626.58 for the taxable year ended June 30, 1971, resulting in deficiencies in the sums of $2,521.40 and $3,415.12, respectively, on account of which respondent has asserted additions to the tax under section 6653(a). Big Three presented no evidence to overcome the respondent's determination with respect to either the deficiencies or the additions to the tax under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. Such facts and the exhibits attached thereto are incorporated herein by this reference. The petitioner, Charles W. Kolb, Sr., is an individual whose legal residence at the time the petition was filed herein was Homestead, Florida. For the calendar years 1969, 1970, and 1971, petitioner filed individual Federal income tax returns, using the cash receipts and disbursements method of accounting, with the Internal Revenue Service Center, Chamblee, *105 Georgia. The petitioner was granted an extension until May 8, 1971, to file his Federal income tax return for the taxable year 1970. Said return was received at the Internal Revenue Service Center at Chamblee, Georgia, on May 17, 1971. At all times material herein, and both prior and subsequent thereto, petitioner has been engaged in the business of buying and selling automobiles, either individually or through corporations organized by him for that purpose. Big Three Auto Brokers, Inc., is a Florida corporation, engaged in the business of retail automobile sales, having its principal place of business in Homestead, Florida, at the time the petition was filed herein. Big Three filed its corporate Federal income tax returns for its taxable years ended June 30, 1969 to 1971, inclusive, using the accrual method of accounting with the Internal Revenue Service Center, Chamblee, Georgia. During the taxable years in controversy, petitioner was president, manager, chief salesman, and sole shareholder of Big Three. Petitioner also was sole shareholder of Keymo Motors Corporation, organized to hold title to a mortgaged piece of property upon which Big Three conducted its business operations *106 in Homestead, Florida. Prior to his involvement with Big Three, petitioner had engaged in a similar business under the name of Keymo Cars, Incorporated (hereinafter referred to as "Keymo Cars"), also located in the Homestead, Florida, area. The First National Bank of Homestead, Florida (hereinafter referred to as "First National"), entered into an agreement with Keymo Cars whereby First National agreed to finance its purchases and sales of automobiles on condition that Keymo Cars and petitioner would guarantee payment of customers' notes. Under the terms of that agreement, First National would remit a percentage of the face amount of customers' notes to Keymo Cars in cash and credit the remainder to a reserve account. The amount thus retained in the dealer reserve account was held as security for the payment of notes. Sometime during the period between 1964 and 1967, Keymo Cars sold certain of its assets (furniture and fixtures) to Schroeder Import & Motor, another retail automobile dealer (hereinafter "Schroeder"). However, Schroeder did not purchase Keymo Cars' inventory of automobiles. Instead it retained them on consignment, continuing the financing agreement entered into *107 between Keymo Cars and First National. As it sold those cars, the funds received were used to reduce the liability of Keymo Cars to First National. During this period, petitioner remained in the retail automobile business as an employee of Schroeder. In 1966 or 1967, Schroeder filed a voluntary petition in bankruptcy. The promissory note which had been given by Schroeder to petitioner in payment for the assets of Keymo Cars was cancelled. The cars held on consignment by Schroeder were attached and sold during the course of the bankruptcy proceedings. The funds in the reserve account were inadequate to cover the losses incurred by First National on the sale of those automobiles. Thereafter, First National was left with an uncollectible balance in excess of $35,000. Petitioner desired to continue in business as a retail automobile dealer but was unable to do so without adequate financing. First National sought to recover the losses sustained by it in its dealings with Keymo Cars. In 1967, petitioner agreed to execute a promissory note payable to First National in the amount remaining due on the financing of automobiles under Keymo Cars as a condition to continued financing of petitioner's *108 automobile dealership, newly incorporated under the name Big Three Auto Brokers, Inc.
Under the finance agreement between First National, Big Three, and petitioner, Big Three was likewise required to maintain a reserve account to cover any losses resulting from the financing of automobiles purchased and sold by it. During the period involved in this proceeding, income accrued to said reserve account in the form of interest. The amounts thus accrued were transferred by First National to petitioner's loan account in payment of principal and interest due on the note given by petitioner to the bank in satisfaction of the unpaid liability of Keymo Cars. The amounts transferred from the reserve account in payment of petitioner's liability on account of this note in the taxable years 1969, 1970, and 1971, were $12,988.33, $8,429.71, and $13,952.97, respectively. The respondent determined that these amounts were includable in income of the petitioner either as commissions or as dividends. In addition, petitioner received a payment in the amount of $1,304.00 from Big Three which was charged to payroll, in the taxable year 1969. Petitioner did not contest the fact that this amount was not *109 reported in his return for that year. During the years 1969 to 1971, inclusive, Keymo Motors owned certain real property in Homestead, Florida, which it rented to Big Three. During the taxable year 1969, petitioner withdrew for his personal use a total of $2,046.16 in the form of checks drawn on the account of Keymo Motors at the First National Bank, Naranja, Florida. During the taxable year 1970, petitioner withdrew the additional sum of $768.00 from said account for his personal benefit. The respondent determined that these withdrawals were includable in the income of petitioner as dividends. For the taxable years 1969, 1970, and 1971, petitioner filed individual Federal income tax returns purporting to be the joint returns of petitioner and Bettye J. Kolb, his spouse. Bettye J. Kolb did not sign these returns. Petitioner presented no evidence to show that his spouse intended to file a joint return. Petitioner likewise failed to prove that he provided support for Bettye J. Kolb during the years involved. At the trial of this case, petitioner was afforded the opportunity to claim offsetting deductions in the amounts credited to his loan account with First National for the taxable *110 years 1969, 1970, and 1971, in the sums of $12,988.33, $8,429.71, and $13,952.97, respectively, as either a business bad debt deductible under section 166 or as an ordinary and necessary expense deductible under section 162. OPINION With respect to the adjustments made by the respondent in his notice of deficiency for the taxable years 1969 to 1971, inclusive, in the case of petitioner (docket No. 7332-73) and in his notice of deficiency for the fiscal years 1970 and 1971 in the case of Big Three (docket No. 7333-73), the facts are not in dispute. The petitioner failed to present any evidence to overcome the presumption of correctness attaching to the respondent's determinations, and, in fact, the record fully supports the respondent. Rule 142(a), Tax Court Rules of Practice and Procedure.
Similarly, with respect to the additions to the tax under section 6653(a), in the cases of both petitioner and Big Three, and the addition to the tax for the taxable year 1970 under section 6651(a) in the case of the petitioner, there is no proof in the record upon the basis of which the Court is able to find that the respondent was in error. On the other hand, it is equally clear that to *111 the extent petitioner is determined to have received commissions or constructive dividends from Big Three on account of payments made from its reserve account in satisfaction of his indebtedness to First National, petitioner is entitled to an offsetting deduction either as a business bad debt or as an ordinary and necessary expense in connection with his trade or business. At all times material herein, both prior and subsequent to the years involved in this proceeding, petitioner was engaged in the business of buying and selling automobiles. In order to engage in that business, it was necessary to be able to borrow funds with which to purchase automobiles and to provide loans for the purchasers of such automobiles. Before going into business as the sole stockholder of Big Three, petitioner had engaged in the same business through Keymo Cars. In order to arrange financing for Keymo Cars, petitioner had obligated himself to guarantee payment on account of any indebtedness of Keymo Cars to First National. With the failure of Keymo Cars, petitioner became obligated for unpaid indebtedness to First National in a sum exceeding $35,000. Sometime later, petitioner undertook to go into *112 the business of buying and selling automobiles through a new corporation formed by him for that purpose, namely Big Three. When petitioner sought to obtain financing from First National in order to enable Big Three to buy and sell automobiles, the bank required petitioner first to make arrangements to satisfy the prior indebtedness of Keymo Cars of which petitioner was the guarantor. Petitioner thereupon executed a note to First National in the amount of such indebtedness. As funds were available in the reserve account of Big Three with First National, the bank applied such funds to the principal and interest due on petitioner's note. The respondent has included the amounts so paid on petitioner's note in income. The Court has sustained the respondent. The petitioner was on a cash basis of accounting. Any loss incurred by him on account of payment of the indebtedness of Keymo Cars was deductible in the year paid. For purposes of this decision, it must be assumed that, for the taxable years 1969, 1970, and 1971, petitioner paid the sums of $12,988.33, $8,429.71, and $13,952.97, respectively, in satisfaction of his indebtedness. During the years in which payment on said guarantee *113 was made, Keymo Cars no longer existed, having sold certain of its assets to Schroeder which in turn entered bankruptcy proceedings. Since the debt was uncollectible from Keymo Cars, the petitioner clearly sustained a bad debt loss upon payment of the guarantee of Keymo Cars' debt to First National. See Max Putnam v. Commissioner,352 U.S. 82 (1956); Stratmore v. United States,420 F.2d 461 (C.A. 3, 1970); Estate of Martha M. Byers,57 T.C. 568, 574 (1972), affirmed per curiam, 472 F.2d 590 (C.A. 6, 1973); Robert E. Gillespie,54 T.C. 1025, 1031 (1970), affirmed by an unpublished order (C.A. 9, 1972). The petitioner acted as president, manager, and salesman at Keymo Cars. In that capacity, he was compelled to endorse its obligations in order that Keymo Cars might obtain credit from First National. When petitioner organized Big Three, in order to go back into the business as president, manager, and salesman, he was compelled to make provision for the payment of the obligation of Keymo Cars in order to obtain credit with First National for Big Three. Without such credit, Big Three could not *114 have engaged in the buying and selling of cars and petitioner would not have had a job as its president, manager, and salesman. In reality, First National at all times looked to the petitioner for the payment of the amounts due on the financing of the automobiles sold by both Keymo Cars and Big Three, albeit that as a matter of record, the petitioner was not in business as an individual. It was nevertheless the petitioner's occupation that was at stake. Thus, upon payment of the obligation to First National, petitioner is entitled to a business bad debt deduction under section 166(a). See Helvering v. Price,309 U.S. 409 (1940); Eckert v. Burnet,283 U.S. 140, 141 (1931); Donald M. Perry,49 T.C. 508, 521 (1968), and cases cited therein. It is clear that petitioner did not make the payments to revitalize Keymo Cars, now defunct, or to enhance the value of his investment in Big Three. At trial, petitioner testified that First National would not continue to floor plan his inventory of cars at Big Three unless he agreed to deliver a personal promissory note in discharge of his prior guarantor liability. When petitioner signed *115 the promissory note in excess of $35,000 to First National in 1967, he did not assume a new obligation. He was already legally obligated to First National as guarantor of Keymo Cars' financing agreement. He was not compelled by mere moral obligation as respondent contends. Welch v. Helvering,290 U.S. 111 (1933), is thus readily distinguishable. Respondent also determined that petitioner did not file joint income tax returns with his spouse, Bettye J. Kolb, for the years 1969, 1970 and 1971 since her failure to sign said returns disqualifies them from treatment as joint returns under section 6013, 6061 and the regulations thereunder. Section 1.6013-1(a) (2), Income Tax Regs., provides in part, as follows: A joint return of a husband and wife (if not made by an agent of one or both spouses) shall be signed by both spouses. Furthermore, section 1.6061-1(a), Income Tax Regs., provides in part, as follows: Requirement. Each individual (including a fiduciary) shall sign the income tax return required to be made *116 by him, except that the return may be signed for the taxpayer by an agent who is duly authorized in accordance with paragraph (a) (5) or (b) of section 1.6012-1 to make such return. The failure of one spouse to sign a purported joint return may be overcome. See Muriel Heim,27 T.C. 270, 273 (1956), affd. 251 F.2d 44 (C.A. 8, 1958) and cases cited therein. However, it is incumbent upon the petitioner to prove that the returns were intended to be joint returns. Hyman B. Stone,22 T.C. 893, 901 (1954). Petitioner has failed to present any evidence to overcome the presumption against the rule that the spouse who failed to sign said purported joint return impliedly consented that said return was her return. Vincent S. Hennen,35 T.C. 747, 749 (1961). The Court must sustain the respondent on this issue. Furthermore, since petitioner's returns for the taxable years 1969, 1970, and 1971 are separate returns, he is precluded by the provisions of section 151(a) and (b) from claiming an exemption for his wife for these three years *117 unless he can show that she had no gross income during this period. [2] The fact that she may not have had sufficient gross income to require her to file a return is immaterial. Section 1.151-1(b), Income Tax Regs.
Accordingly, petitioner is not entitled to an exemption for his spouse, Bettye J. Kolb, for the years 1969, 1970, and 1971 since he has introduced no evidence to show that she had no gross income of her own during these three years. See William B. Breland v. United States,323 F.2d 492 *118 (C.A. 5, 1963), reversing and remanding 9 A.F.T.R.2d 952 (S.D., Miss., 1962), 62-1 USTC par. 9318. In addition to the deficiencies in tax, respondent determined that petitioner is liable for the addition to tax provided by section 6653(a) for each of the taxable years 1969, 1970 and 1971. Section 6653(a) provides in pertinent part, as follows: * * * If any part of any underpayment * * * of any tax imposed by subtitle A * * * is due to negligence or intentional disregard of rules and regulations * * * there shall be added to the tax an amount equal to 5 percent of the underpayment. The determination by the respondent that at least a part of the underpayment in each year was due to negligence is considered prima facie correct and casts the burden upon the petitioner to prove that the imposition of the addition to tax is erroneous. Leroy Jewelry Company, Inc.,36 T.C. 443 (1961); David Courtney,28 T.C. 658 (1957). Petitioner has not disputed this *119 issue either in his petition or by his testimony at trial. Furthermore, petitioner has understated his income in each of the years 1969, 1970, and 1971. He has failed to submit any evidence which would establish that the understatements were not due to negligence or intentional disregard of the rules and regulations. Accordingly, the petitioner has failed to sustain his burden of showing that the imposition of the addition to tax was erroneous. Carlos Marcello v. Commissioner,380 F.2d 499, (C.A. 5, 1967), affg. a Memorandum Opinion of this Court, cert. denied 389 U.S. 1044 (1968). Respondent also determined that petitioner is liable for the addition to tax under section 6651(a) for failure to timely file his income tax return for the year 1970. Section 6651(a) provides in part: * * * In case of failure * * * to file any return required under authority of subchapter A of Chapter 61 * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not *120 due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than one month. * * * The burden of proof is on petitioner to establish that reasonable cause existed for failing to file his return when due. William M. Bebb,36 T.C. 170 (1961); Logan Lumber Co. v. Commissioner,365 F.2d 846 (C.A. 5, 1966), affg. and remanding a Memorandum Opinion of this Court. The record indicates that after petitioner's request for an extension of time to file his return had been rejected by the Director of the Internal Revenue Service Center at Chamblee, Georgia, on April 28, 1971, petitioner had until May 8, 1971, to file his 1970 income tax return. [3] His return was not received at said Internal Revenue Service Center until May 17, 1971, and petitioner failed to present any evidence to explain the delay. Accordingly, the Court sustains the respondent's determination that the petitioner is liable for the addition to tax under section 6651(a) for failure to file *121 a timely return for the year 1970. Decision will be entered under Rule 155, in docket No. 7332-73.
Decision will be entered for the respondent in docket No. 7333-73.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Section 151 provides in part as follows: (a) Allowance of Deductions.--In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income. (b) Taxpayer and Spouse. -- an exemption * * for the taxpayer; and an additional exemption * * * for the spouse of the taxpayer if a joint return is not made by the taxpayer and his spouse, and if the spouse, for the calendar year in which the taxable year of the taxpayer begins, has no gross income and is not the dependent of another taxpayer.↩
3. Rev. Rule 64-214, 1964-2 C.B. 472↩.