ROBERT W. MILLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Miller v. Commissioner
Docket No. 31444-86.
United States Tax Court
T.C. Memo 1989-313; 1989 Tax Ct. Memo LEXIS 300; 57 T.C.M. (CCH) 809; T.C.M. (RIA) 89313; June 26, 1989. Robert W. Miller, pro se. Mary E. (Betsy) Pierce, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined deficiencies in petitioner's Federal income tax as follows: Section
Deficiency
6651(a)(1) [1]
December 31, 1981
$ 6,479.00
$ 1,620.00
December 31, 1982
1,777.00
444.00
December 31, 1983
13,121.00
3,280.00
Total
$ 21,377.00
$ 5,344.00
*301 Additions to the Tax
Section
Section
Section
Section
6653(a)(1)
6653(a)(2)
6654
6661
December 31, 1981
$   324.00
*
$ 499.00
December 31, 1982
89.00
**
173.00
December 31, 1983
656.00 ***
805.00
$ 1,312.00
Total
$ 1,069.00
$ 1,477.00
$ 1,312.00
The issues we must decide are: (1) whether petitioner received unreported income in 1981, 1982, and 1983 in the amounts of $ 8,743, $ 9,268 and $ 39,667, respectively, and (2) whether petitioner is liable for additions to tax pursuant to sections 6651, 6653(a), 6654, and 6661. Some of the facts in this case have been stipulated and are so found. Petitioner resided in Paskin, Wisconsin at the time he filed a petition in this case. Petitioner, the sole proprietor of an auto body repair shop, did not file a Federal income tax return for 1981, 1982 or 1983. Respondent determined, using Bureau of Labor *302 and Statistics standards, that petitioner earned income in the amounts of $ 11,743, $ 9,268, and $ 9,617 in 1981, 1982 and 1983, respectively. In addition, respondent determined that the cash of $ 30,050 that petitioner used to purchase real property in 1983 was income to petitioner in 1983. Respondent's determination of a deficiency is presumptively correct. Petitioner has the burden of proving the deficiency determination erroneous. Rule 142(a), Tax Court Rules of Practice and Procedure.
In 1983 petitioner bought residential real property in St. Paul, Minnesota for $ 30,050 at a government auction. The property was auctioned to satisfy the outstanding tax liabilities of Daniel Pilla, who was living on the property with his family. On the date of the auction, petitioner paid $ 7,512 in cash and within 10 days paid the balance of the purchase price in cash. We must first decide whether petitioner received income in 1983 of $ 30,050. Petitioner testified that he received the funds used to pay for the real property from, (1) the sale of his house in Cumberland, Wisconsin in 1981 ($ 12,896.49), (2) cash petitioner saved from 1971 to 1976 ($ 6,633.51), (3) the sale of silver *303 in petitioner's possession ($ 6,000), and (4) cash petitioner borrowed from his stepmother ($ 4,500). Respondent prepared a source and application of funds analysis of petitioner's income and expenses from 1980 to 1983 based upon records given to respondent by petitioner. His analysis reveals that after the application of gross receipts, including receipts from the sale of his house, to expenses, petitioner needed an additional $ 13,717.01 to pay his personal and business expenses from 1981 to 1983. Therefore, in accordance with the records given by petitioner to respondent, we believe that petitioner could not have had any funds available from the sale of his Cumberland property to apply towards the purchase price of the residential property in St. Paul. Petitioner did not introduce W-2 forms, tax returns or other documentary evidence proving his gross income for his 1975, 1977, 1978, or 1979 tax years. Petitioner argues, though, that he accumulated a cash hoard from earnings in 1971 to 1976. We find petitioner's claim to be implausible. Although petitioner prepared his own source and application of funds analysis for 1971 to 1983, his analysis is not supported by the evidence. *304 First, the sum of petitioner's gross income after taxes as reported on his 1971, 1972, 1973, 1974 and 1976 Federal income tax returns in evidence plus tax refunds in evidence for those years is almost $ 2,500 less than the gross income after taxes asserted by petitioner in his analysis. More importantly, although petitioner's analysis states amounts expended for certain personal consumption items from 1971 to 1975, it ignores amounts he expended for items that he deducted on his returns for those years. For example, petitioner deducted medical expenses on his returns which he forgot to include in his funds analysis. Presumably, petitioner did not falsely state expenditures for purposes of itemizing his deductions. Petitioner estimated his personal consumption expenses as follows: 1971 to 1975
1976 food
$   580
$  1,040
housing
0
360
transportation
225
600
clothing
500
500
personal
0
0
medical, and
0
0
other
1,000
1,000
$ 2,305
$ 3,500
On petitioner's returns for those years, however, petitioner itemized deductions exceeding petitioner's $ 1,000 estimate of "other" *305 expenses in the following amounts: 1971
$ 1,766.00
1972
- 0 -
1973
1,965.16
1974
2,873.22
1975
No return in evidence.
1976
2,231.65
These itemized deductions included medical expenses, real estate taxes, contributions, interest, child support, and miscellaneous business expenses. As a result, petitioner has overstated the funds available to save in each year. Petitioner claims further that part of his cash hoard savings were derived from unemployment compensation and disability payments received from 1971 to 1976. Petitioner, however, offered no corroborating proof of his disability, source of funds, or length of his disability. He also offered no corroborating evidence of his unemployment. Given his failure of proof, we cannot accept petitioner's analysis. We do not believe that in 1983 petitioner possessed a cash hoard available to apply to the purchase price of the St. Paul residential property from his earnings in 1971 to 1976. Of the $ 30,050 of income respondent determined for 1983, petitioner testified that $ 6,000 was from the sale of silver. Petitioner testified that he had acquired the silver over several years *306 and we have no reason to doubt this testimony. Thus, we find that petitioner did have $ 6,000 available to apply towards the purchase price of the house in St. Paul. Petitioner, however, did not establish his basis in the silver and, on this failure of proof, he must recognize $ 6,000 of gain. This gain is eligible for the long-term capital gains deduction. At trial petitioner did not produce any evidence of a loan from his stepmother. We cannot find that he had funds available from any such loan. Due to the absence of records in evidence corroborating petitioner's claim of a cash hoard, we find that petitioner has not carried his burden of showing that the $ 30,050 he paid for the real estate in St. Paul was derived from nontaxable sources. Petitioner, therefore, must include $ 30,050 in gross income in 1983, $ 6,000 of which is long-term capital gain. The next issue we must decide is whether petitioner earned taxable income of $ 8,743, $ 9,268 and $ 9,617 in 1981, 1982 and 1983, respectively. From 1981 to 1983 petitioner was the sole proprietor of an auto body and repair shop. Petitioner, however, did not file any income tax returns for those years. Accordingly, respondent, *307 using Bureau of Labor Statistics Standards, determined that petitioner had income of $ 8,743, $ 9,268, and $ 9,617 for 1981, 1982 and 1983, respectively. Petitioner has not proved respondent's determination to be erroneous. At trial petitioner did not offer any testimony or documentary evidence regarding the finances of his business. Moreover, he offered no documentary evidence regarding his income or expenses for the years in issue to support his testimony. Respondent's determination, therefore, is presumptively correct, and petitioner must include in his income $ 8,743, $ 9,268, and $ 9,617 for 1981, 1982, and 1983, respectively. The next issue we must decide is whether petitioner is liable for additions to tax pursuant to section 6651(a)(1) for failure to file a return for 1981, 1982, and 1983. Section 6651(a)(1) provides for an addition to tax for failure to file a Federal income tax return. We have found that the income petitioner earned during the years in issue required him to file a return for those years. Petitioner did not file Federal income tax returns for 1981, 1982 or 1983 and introduced no evidence of reasonable cause for his failure to file. Petitioner's unsupported *308 assertion that he was not required to file a return because he did not earn enough income is contrary to the evidence and does not constitute reasonable cause for his failure to file. Breland v. United States,323 F.2d 492, 497 (5th Cir. 1963). We, therefore, hold petitioner liable for an addition to tax pursuant to section 6651(a)(1) as determined by respondent. We next must decide whether petitioner is liable for the addition to tax for negligence pursuant to section 6653(a)(1). Petitioner presented no evidence to rebut respondent's determination that the entire underpayment was due to negligence. Moreover, petitioner failed to keep adequate records of his business activity and failed to take due care in tax matters for the years in issue. Accordingly, we hold petitioner liable for the additions to tax for negligence as determined by respondent pursuant to section 6653(a)(1) and section 6653(a)(2). Respondent also determined additions to tax pursuant to section 6654 for underpayments of estimated tax. If the taxpayer fails to pay a sufficient amount of estimated tax, either through withholding or quarterly payments, imposition of the section 6654 addition *309 to tax is mandatory unless the taxpayer shows that one of several statutory exceptions applies. Section 6654; Grosshandler v. Commissioner,75 T.C. 1, 20-21 (1980). Petitioner introduced no evidence on this issue. Consequently, we sustain the additions to tax determined by respondent pursuant to section 6654(a). Reaver v. Commissioner,42 T.C. 72, 83 (1964). Finally, respondent determined that petitioner is liable for an addition to tax pursuant to section 6661 for 1983. Section 6661(a) provides that if there is a substantial understatement of income tax for any taxable year there shall be added to the taxpayer's tax an amount equal to 25 percent of the amount of any underpayment attributable to the understatement. A substantial understatement is defined as an understatement of income tax exceeding the greater of (i) 10 percent of the tax required to be shown on the return for the taxable year or (ii) $ 5,000. Section 6661(b). Because we have held that petitioner's income for 1983 includes the $ 30,050 used to pay for the St. Paul, Minnesota property, a substantial understatement of tax exists for 1983. Section 6661(b)(2)(B) reduces the amount *310 of any understatement attributable to (a) the tax treatment of any item supported by substantial authority or (b) any item adequately disclosed in the return or in a statement attached to the return. In this case petitioner had no substantial authority for failing to report his tax liability on a return for 1983 and made no disclosure. Consequently, we hold petitioner liable for the section 6661 addition to tax as determined by respondent. Decision will be entered pursuant to Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect for the years in issue, unless otherwise indicated. * 50% of the interest due on $ 6,479.00 ** 50% of the interest due on $ 1,777.00 *** 50% of the interest due on $ 13,121.00↩