[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10914
_____

D.C. Docket No. 1:15-cv-20884-UU

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ESTELLE STEIN,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 31, 2018)

Before ED CARNES, Chief Judge, TJOFLAT,  MARCUS, WILSON, WILLIAM PRYOR, MARTIN, JORDAN, ROSENBAUM, JULIE CARNES, NEWSOM, and HULL, Circuit Judges. *

---

* Judge Jill Pryor is recused from this case and did not participate in this decision. Judge Frank Hull continued to participate in this decision after she assumed senior status pursuant to 28

JORDAN, Circuit Judge:

We hold that an affidavit which satisfies Rule 56 of the Federal Rules of Civil Procedure may create an issue of material fact and preclude summary judgment even if it is self-serving and uncorroborated. And because this principle applies in all civil cases, including those in the realm of tax law, we overrule that portion of *Mays v. United States*, 763 F.2d 1295, 1297 (11th Cir. 1985), which is (or may be interpreted to be) to the contrary.

## I

This case concerns IRS assessments, so we begin with some basic tax concepts. An assessment "amounts to an IRS determination that a taxpayer owes the [f]ederal [g]overnment a certain amount of unpaid taxes," and is "entitled to a legal presumption of correctness—a presumption that can help the [g]overnment prove its case against a taxpayer in court." *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002). "In reducing an assessment to judgment, the [g]overnment must first prove that the assessment was properly made. . . . [If it does so,] the taxpayer must then prove that the assessment is erroneous in order to prevail." *United States v. White*, 466 F.3d 1241, 1248 (11th Cir. 2006). As far as we can tell, there are no reported federal cases addressing what evidence a taxpayer needs to present to show that an IRS assessment has been paid or satisfied.

U.S.C. § 46(c).

2

**A**

In 2015, the government sued Estelle Stein for outstanding tax assessments, late penalties, and interest owed for tax years 1996, 1999, 2000, 2001, and 2002. *See* 26 U.S.C. § 7402. Its complaint alleged that Ms. Stein owed approximately $220,000 plus fees and statutory additions.

When it moved for summary judgment, the government sought to demonstrate that Ms. Stein had outstanding tax assessments by submitting copies of her federal tax returns, transcripts of her accounts for the tax years in question, and an affidavit from an IRS officer. The government acknowledged that Ms. Stein had paid the taxes due for 1996, 1999, and 2000 (as well as some additional small amounts), but claimed she had not satisfied the accrued penalties and interest for those years. As for 2001 and 2002, the government asserted that Ms. Stein had not paid any taxes, penalties, or interest. The government did not depose Ms. Stein.

In response to the government's summary judgment motion, Ms. Stein submitted an affidavit of her own stating that, "to the best of [her] recollection," she had paid the taxes and penalties owed for the years in question. Her affidavit specified that she had retained an accounting firm to file the tax returns after the

3

death of her husband, who had been solely responsible for filing the couple's tax returns and paying their taxes; that she recalled paying the taxes due, including penalties, for each of those tax returns; that she no longer had bank statements to establish her payments to the IRS; that she could not obtain statements from her bank to prove her payments; and that the IRS had acknowledged misapplying her tax payment for 1996 to tax year 1979. The relevant paragraphs of Ms. Stein's affidavit stated as follows:

> 8. For 1996, this tax return was filed on November 15, 2004. The IRS had no record of receiving any payment and is claiming the full amount of the tax is due, along with interest and penalties.
>
> * * *
>
> 10. For the year 1999, I filed the return as surviving spouse on February 11, 2005. The return showed an amount due of $33,612. I paid $35,226, which included the late penalty. The IRS has a record of that payment.
>
> 11. For the year 2000, I filed my return as surviving spouse on January 11, 2005. The amount due on the return was $4,127. I paid $4,349.00, which amount included the late penalty. The IRS has a record of having received that payment.
>
> 12. For the year 2001, I filed my return, as surviving spouse, on March 10, 2005. The amount of the return shows $15,998 due. Although I recall paying the tax on that return, including a late penalty consistent with the other returns that I filed, the IRS does not have a record of receiving such payment.
>
> 13. For the year 2002, I filed my return on March 10, 2005, as surviving spouse. The amount of tax shown on the return was $52,342. Although I recall writing a check for this amount, plus, late penalties, the IRS has no record of receiving his amount.

4

\* \* \*

> 21. . . . [I]t is my unwavering contention that I paid the taxes due, including late filing penalties, at such time as I filed the returns for each of the tax years in question.

D.E. 32-1 at 2–3.

The district court entered summary judgment in favor of the government. *See* D.E. 40. It first concluded that the evidence submitted by the government created a presumption that its assessments were correct. Turning to Ms. Stein's affidavit, the district court ruled that "[a] number of the facts contained within [the] affidavit [were] not relevant facts for . . . consideration." *Id*. at 6. Although Ms. Stein maintained that payments had been made, she "did not produce any evidence documenting said payments," *id*., and therefore did not satisfy her burden to overcome the presumption of correctness given to the government's assessments. As a result, there was "no genuine dispute as to any material fact," *id*. at 7, and the government was entitled to judgment as a matter of law.

Ms. Stein appealed, and a panel of this court affirmed. The panel ruled that her "affidavit failed to create a genuine factual dispute about the validity of the [government's] assessments" because, under *Mays*, 763 F.2d at 1297, her "general and self-serving assertions . . . failed to rebut the presumption established by the assessments." *United States v. Stein*, 840 F.3d 1355, 1357 (11th Cir. 2016). We

vacated the panel's opinion and took the case en banc to determine whether *Mays* should be overruled.

## II

*Mays*, a tax refund case, came to us in a summary judgment posture. We affirmed the district court's grant of summary judgment in favor of the government, holding that the taxpayer's submissions were insufficient to create an issue for trial. *See* 763 F.2d at 1297. We first noted that a taxpayer in a refund suit has the twin burdens of showing that the government's assessment is wrong, and of establishing the "correct amount of the refund due." *Id*. We then explained that a taxpayer's claim "must be substantiated by something other than tax returns, uncorroborated oral testimony, or self-serving statements." *Id.* (internal citations omitted). Turning to the record in the case, we concluded that the taxpayer's computer printout of business expenses (prepared after a tax audit) and net worth statements (which did not refer to any original records) "did not overcome the presumption of correctness due [to] determinations" of the Commissioner of the IRS: "[The taxpayer] has submitted only self-serving documents which do not substantiate his claims." *Id.*

We overrule *Mays* to the extent it holds or suggests that self-serving and uncorroborated statements in a taxpayer's affidavit cannot create an issue of material fact with respect to the correctness of the government's assessments.

6

Nothing in Rule 56 prohibits an otherwise admissible affidavit from being self-serving. And if there is any corroboration requirement for an affidavit, it must come from a source other than Rule 56.

## A

Rule 56(a) authorizes summary judgment only when "there is no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Rule 56(c), in turn, allows a nonmoving party to dispute a material fact through an affidavit, which must be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof a trial.").

An affidavit cannot be conclusory, *see, e.g., Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990), but nothing in Rule 56 (or, for that matter, in the Federal Rules of Civil Procedure) prohibits an affidavit from being self-serving. Indeed, as the Seventh Circuit observed, "most affidavits submitted [in response to a summary judgment motion] are self-serving." *Payne v. Pauley*, 337 F.3d 767, 772

(7th Cir. 2003).    Not surprisingly, most of our cases correctly explain that a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment.  *See, e.g., Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage."); *Price v. Time, Inc.*, 416 F.3d 1327, 1345 (11th Cir.) ("Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."), *modified on other grounds on denial of reh'g*, 425 F.3d 1292 (11th Cir. 2005).

It makes no difference that this is a tax case.  We apply the same summary judgment standard in tax cases as we do in other areas of law.  *See, e.g., Roberts v. Comm'r*, 329 F.3d 1224, 1227 (11th Cir. 2003) (citing Tax Ct. R. 121, which mirrors Rule 56).  *See also Lewis v. United States*, 336 F. App'x 535, 538 (6th Cir. 2009) (rejecting the argument that the ordinary summary judgment standard does not apply in tax cases).

To support its statement that a taxpayer needs more than his self-serving testimony to preclude summary judgment, *Mays* relied on *Gibson v. United States*, 360 F.2d 457 (5th Cir. 1966).  But *Gibson* does not hold that self-serving statements in a taxpayer's affidavit cannot create a genuine issue of material fact.  In *Gibson*, which involved a claim for a refund of excise taxes, the taxpayer

8

appealed certain unfavorable factual findings made by the district court following a bench trial. The taxpayer argued primarily that the district court had erred in disregarding his testimony and the tax liability calculations contained in his own "excise tax journal." *See id.* at 460–62. The former Fifth Circuit held that the district court's factual findings were not clearly erroneous and explained that the taxpayer's self-serving testimony did "not compel a contrary result." *Id.* at 462.

*Gibson* does not hold that a district court can reject or ignore a taxpayer's affidavit at summary judgment on the ground that it is self-serving. *Gibson* was an appeal from a bench trial, and in that setting a district court can certainly take into account the self-serving nature of a litigant's testimony. A district court is, after all, permitted to assess credibility and weigh evidence at a bench trial, and the same goes for the jury when it is the trier of fact.[1]

Properly understood, *Gibson* stands only for the unremarkable proposition that a fact-finder can choose to disregard a litigant's self-serving (and unsupported) trial testimony, and that its decision to do so generally will not constitute clear error. That proposition has no place at summary judgment, where "the [court's] function is not . . . to weigh the evidence." *Anderson v. Liberty Lobby, Inc.*, 477

---

[1] Of note, none of the cases cited in *Gibson* arose in a summary judgment posture. *See Pinder v. United States*, 330 F.2d 119, 121 (5th Cir. 1964) (reviewing jury verdict); *Mendelson v. Comm'r*, 305 F.2d 519, 521 (7th Cir. 1962) (reviewing tax court's factual findings); *Urban Redevelopment Corp. v. Comm'r*, 294 F.2d 328, 332 (4th Cir. 1961) (same); *Comm'r v. Smith*, 285 F.2d 91, 93 (5th Cir. 1960) (same); *Carter v. Comm'r*, 257 F.2d 595, 596, 599 (5th Cir. 1958) (same); *Anderson v. Comm'r*, 250 F.2d 242, 246–47 (5th Cir. 1957) (same); *Archer v. Comm'r*, 227 F.2d 270, 272 (5th Cir. 1955) (same).

9

U.S. 242, 249 (1986).  *See also Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998) (rejecting the argument that a self-serving affidavit is insufficient to defeat summary judgment because it would "thrust the courts—at an inappropriate stage—into an adjudication of the merits").

## B

Nor does Rule 56 require that an otherwise admissible affidavit be corroborated by independent evidence.  As noted, Rule 56(c) states only that an affidavit must be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

We see no basis for imposing a corroboration gloss on Rule 56, *cf. Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168–69 (1993) (rejecting a judicially-imposed "heightened pleading standard" not found in Federal Rules of Civil Procedure 8 and 9 for municipal liability cases), and reaffirm that "even in the absence of collaborative evidence, a plaintiff's own testimony may be sufficient to withstand summary judgment." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1160 (11th Cir. 2012).   *Accord E.E.O.C. v. Warfield-Rohr Casket Co.*, 364 F.3d 160, 163–64 (4th Cir. 2004); *Jackson v. Ducksworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990); *Becho, Inc. v. United States*, 47 Fed. Cl. 595, 603–04

& n.11 (2000); *Marsh v. Hog Slat, Inc.*, 79 F. Supp. 2d 1068, 1076 (N.D. Iowa 2000).    If corroboration is needed, then that requirement must come from a source other than Rule 56, such as the substantive law that governs the parties' dispute or the Federal Rules of Evidence.  *See, e.g.,* Fed. R. Evid. 804(b)(3)(B) (requiring corroboration to support the admission of statements against the declarant's interest).[2]

## III

A non-conclusory affidavit which complies with Rule 56 can create a genuine dispute concerning an issue of material fact, even if it is self-serving and/or uncorroborated.  We overrule *Mays* to the extent that it holds or suggests otherwise, and remand the case to the panel for consideration of Ms. Stein's appeal.

We do not mean to suggest that a self-serving and/or uncorroborated affidavit will always preclude summary judgment.  We hold only that the self-serving and/or uncorroborated nature of an affidavit cannot prevent it from creating

---

[2] In the appeal of a tax refund case that went to trial, we stated almost 40 years ago that a taxpayer cannot meet his burden through his "uncorroborated oral testimony." *Griffin v. United States*, 588 F.2d 521, 530 (5th Cir. 1979) (concluding that, because the taxpayer's testimony was corroborated, the issue was for the jury).  *Mays*, itself a tax refund case, cited *Griffin* for the proposition that a taxpayer's refund claim needs to be substantiated by "something other than . . . uncorroborated oral testimony."  *Mays*, 763 F.2d at 1297.  This case does not involve a refund claim, and the appeal is from a summary judgment order.  Given the posture and nature of this en banc proceeding, we do not express any views on whether the quoted statement from *Griffin* is correct as a matter of substantive federal tax law.

an issue of material fact.  And we leave to the panel the task of determining the impact of Ms. Stein's affidavit.

Finally, we recognize that the government, in its en banc brief, has made a number of additional and related arguments in support of the district court's summary judgment order.  For example, the government argues that, in a case like this one, a taxpayer's affidavit concerning the matter of payment must be substantiated and corroborated (for example, by documentary evidence) pursuant to principles of substantive federal tax law, particularly given the presumption of correctness that attaches to its assessments.  Given the narrow question presented for en banc review, we think it is best for the panel to consider the government's arguments, as well as Ms. Stein's responses to them.

**REMANDED TO THE PANEL WITH INSTRUCTIONS.**

WILLIAM PRYOR, Circuit Judge, concurring:

I concur fully in the majority opinion, but I write separately to highlight the irony of our earlier precedent when viewed in the light of the history of the Seventh Amendment. The precedent we overrule today, *Mays v. United States*, prevented juries from resolving factual disputes when a taxpayer offered only a self-serving affidavit in support of his position. 763 F.2d 1295, 1297 (11th Cir. 1985). As the majority opinion explains, that rule had no basis in law. But it also flouted the history of the right to a jury trial in civil cases.

In the decades before the American Revolution, Parliament developed procedures to enforce its revenue measures by evading colonial juries. *See* 1 Julius Goebel, Jr., *History of the Supreme Court of the United States* 85–86 (Paul A. Freund ed., 1st ed. 1971); Philip Hamburger, *Is Administrative Law Unlawful?* 150 (2014). England had struggled to enforce its trade laws in the colonies, and colonial officials in America blamed local juries for refusing to be impartial in customs disputes. *See* Carl Ubbelohde, *Vice-Admiralty Courts and the American Revolution* 15 (1960). In response, Parliament expanded the jurisdiction of admiralty courts, which sat without juries, to include trade cases that would have been tried by a jury in England. *See* Ubbelohde, *supra* at 15–16, 21. Later, seeking

13

to extract more revenue from the colonies, Parliament enacted the Sugar Act for "the improvement of 'the Revenue of th[e] Kingdom'" and extended the power of customs officials, at their discretion, to "channel cases into admiralty courts, and so to eliminate jury trial." Goebel, *supra* at 85–86 (quoting 4 Geo. 3, c. 15 (Eng. 1764)); *see also* Caleb Nelson, *The Constitutionality of Civil Forfeiture*, 125 Yale L.J. 2446, 2463 (2016). And the Stamp Act, 5 Geo. 3, c. 12 (Eng. 1765), provided that customs officials could enforce not only the stamp tax, but also "revenue acts in general" in the juryless admiralty courts. Goebel, *supra* at 86.

Colonial Americans vehemently objected to these measures, and the denial of the right to a jury in tax cases became a chief complaint animating the American Revolution. The "colonies formed a Congress to protest 'the tyrannical acts of the British Parliament.'" Hamburger, *supra* at 150 (quoting Resolutions of the Stamp Act Congress (Oct. 19, 1765)). The Stamp Act Congress declared that "trial by jury, is the inherent and invaluable right of every British subject in these colonies." Resolutions of the Stamp Act Congress (Oct. 19, 1765), in *Select Charters and Other Documents Illustrative of American History 1606-1775*, at 315 (William MacDonald ed., MacMillan & Co. 1906). And it denounced "extending the jurisdiction of the courts of admiralty beyond its ancient limits" because of its "manifest tendency to subvert the rights and liberties of the colonists." *Id*. In the Declaration of Independence, Americans cited the "depriv[ation] in many cases, of

14

the benefit of Trial by Jury" as one of the "Usurpations" committed by King George III that they would no longer tolerate. The Declaration of Independence paras. 2, 20 (1776).

The failure to guarantee the right to a jury trial in civil cases almost prevented the ratification of the Constitution. In attempting to persuade New York to ratify the Constitution, Alexander Hamilton acknowledged "[t]he objection" that had "met with most success" in his home state and "several of the other states" was "*the want of a constitutional provision* for the trial by jury in civil cases." The Federalist No. 83, at 558 (Alexander Hamilton) (Jacob E. Cooke ed., 1961). And he discussed the specific argument that the civil jury is a necessary "safeguard against an oppressive exercise of the power of taxation." *Id*. at 563. As Justice Story later explained, Americans decided that it was not enough that Congress had the authority "to provide in all cases for the trial by jury." *United States v. Wonson*, 28 F. Cas. 745, 750 (C.C. Mass. 1812) (No. 16,750). The defenders of the Constitution prevailed in the ratification debates only after promising an amendment that guaranteed the right to trial by jury in civil cases. Stanton D. Krauss, *The Original Understanding of the Seventh Amendment Right to Jury Trial*, 33 U. Rich. L. Rev. 407, 412–13 (1999). Americans then enshrined that right in the Seventh Amendment. U.S. Const. Amend. VII.

15

Our precedent in *Mays* lost sight of the historical basis for the right to a civil jury when it denied a taxpayer a jury trial if all he offered in his favor was a self-serving affidavit to rebut official records of his delinquency. In so doing, *Mays* ousted the jury from its historical role in the exact context—the enforcement of tax laws—that prompted the founding generation to adopt the Seventh Amendment in the first place. Today, we rectify that error.