[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13423
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-14500-DMM


TERRY EUGENE SEARS,

Plaintiff–Appellant,

versus

WARDEN OKEECHOBEE CORRECTIONAL INSTITUTE,
R. MCCRACKEN,
Assistant Warden of Programs, Okeechobee Correctional Institution,
SUSAN MAHER,
Chief Assistant Attorney General,
SNEIDER,
Assistant Warden of Operations, Okeechobee Correctional Institution,
COLONEL S. ANDERSON,
Harden Correctional Institution,
CAPTAIN D.D. THOMAS,
Okeechobee Correctional Institution,
SERGENT D. REMBERT,
Okeechobee Correctional Institution,
SERGEANT A VILLALPANDO,
Okeechobee Correctional Institution,
SERGEANT T.M. BROWN,
Okeechobee Correctional Institution,

OFFICER QUINONES,
Okeechobee Correctional Institution, et al.,

Defendants–Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 11, 2019)

Before MARTIN, NEWSOM and FAY, Circuit Judges.

PER CURIAM:

Terry Eugene Sears, proceeding pro se, appeals the district court's grant of summary judgment in favor of defendants Captain D. Thomas, Sergeant A. Villalpando, Sergeant T.M. Brown, and Officer M. Quinones (collectively, the "prison officials") on his excessive force and deliberate indifference to medical needs claims. We reverse and remand in part, and affirm in part.

## I. BACKGROUND

Sears, pro se, filed a second amended 42 U.S.C. § 1983 complaint against five prison officials of the Okeechobee Correctional Institution in their official and individual capacities, including Thomas, Villalpando, Quinones, and Brown.[1] Sears raised several Eighth Amendment claims against the prison officials based

---

[1] Sears does not challenge the dismissal of his claims against the fifth defendant, Sergeant D. Rembert.

on incidents occurring at the Okeechobee Correctional Institution on August 7, 2015, and January 13, 2016.[2]

In a sworn affidavit filed separately from his second amended complaint, Sears stated the following.  On August 7, 2015, he was arbitrarily arrested by Villalpando and placed in handcuffs.  Thomas escorted Sears to the captain's office, unlocked the door, and entered into the office.  When Sears followed Thomas into the room, Thomas turned around unexpectedly and shoved Sears into the closed door, causing Sears to hit his head on the door.  Thomas then escorted Sears out of the office and shoved him into a plexiglass window.  Villalpando and Thomas used a modified "take-down" technique on Sears as they escorted him to the medical building, which involved placing their arms under his and lifting upward.  Nurse Sapp then conducted a pre-confinement examination of Sears, but no injuries were visible.

Thomas and Villalpando then exited the medical building with Sears, who told Thomas that the "Florida Department of Corrections is full of punks like you, and I sue your asses every chance I get!"  Thomas then punched Sears in the face, breaking his eyeglasses.  Sears ran to avoid being punched again but Thomas

---

[2] Sears also raised supervisory liability, retaliation, and religious freedom claims in his second amended complaint; he sought both compensatory and punitive damages for his injuries. However, because Sears has not challenged the district court's grant of summary judgment as to those claims, they are deemed abandoned. *See Harris v. United Auto. Ins. Grp.*, 579 F.3d 1227, 1231 n.1 (11th Cir. 2009) (claims not raised on appeal are abandoned).

caught him, slammed him to the ground, and kicked him twice in the side.  Sears began yelling loudly and kicking to defend himself; Thomas began punching Sears in the head and neck.  Villalpando stood by and watched, called for assistance, and kneed Sears in the back.  Inmates housed in the confinement unit began yelling loudly out of their windows and banged on their windows, bunks, and doors to draw attention to Thomas's 13-minute assault on Sears.  Other officers arrived and began assaulting Sears; Thomas made no efforts to intervene.  Thomas ordered the officer with a video camera to not record the incident.  Sears was escorted to the confinement unit; an officer began videotaping the post use-of-force examination performed by Nurse Sapp.  A close-up of Sears's left eye was taken.  Sears was systematically denied his request to see a doctor for 28 days following the incident.

Sears further stated that he was arbitrarily arrested by Sergeant Brown on January 13, 2016, in retaliation for grievances he had filed against her.  Sears was placed in handcuffs and assistance was called.  Thomas and Officer Quinones responded and utilized the modified take-down technique on Sears, causing him excruciating pain in his injured shoulders.  Sears was bent over half-way until he was flipped over onto the pavement.  Brown and Thomas readjusted the handcuffs, squeezing them more tightly around Sears's wrists.  Sears was dragged in this position for approximately 65 meters over the course of 23 minutes.  Sears's pants and underwear slid down, exposing his genitals and buttocks.  Brown stood by and

4

watched.  Sears was taken directly to confinement and did not receive medical care.  On January 27, 2016, Dr. Nichols examined Sears and diagnosed him with bruised ribs and "sprained rotary cups" in his shoulders.  Sears was prescribed medication for those injuries but did not receive it before he was transferred to another facility two days later.

In a subsequent sworn narrative statement, Sears reiterated his previous assertions and added the following.  Following the August 2015 incident, Nurse Sapp saw Sears's bruised eye, broken eye-glasses, and muddy clothes.  Sears suffered "a bruised blackened left eye, broken eye-glasses, minor cuts and scratches, bruised ribs, bruised shoulders, skinned knees, swollen wrists, cut wrists, reinjured shoulders, sprained rotary cups; psychological and emotional trauma, depression, paranoia, fear, anxiety, mental anguish, stress, and personal humiliation" as a result of the attacks.

The prison officials moved for summary judgment.  In support of their motion, they attached several affidavits from prison officials, as well as the deposition of Sears.  In his deposition, Sears reiterated what he previously had stated in his earlier sworn statement.  In addition, he stated that he did not have any contact with the prison officials after he was confined following the August 2015 incident, though he did speak with another official who denied him medical care.  He also testified that Thomas did not allow Nurse Sapp to document his injuries in

5

August 2015, and Thomas was in charge of the official from whom Sears sought medical assistance. During the January 2016 incident, Sears complained that the handcuffs were fastened too tightly, and Brown squeezed them tighter in response. Brown tried to pull Sears's elbows apart so that the handcuffs would cut into his skin. Sears did not have contact with Thomas, Quinones, or Brown after the incident.

In a report and recommendation ("R&R") on the prison officials' motion for summary judgment, a magistrate judge recommended granting the motion on all counts. Sears objected to the R&R, arguing that the magistrate judge improperly made credibility determinations and failed to draw all reasonable inferences in his favor. The district court adopted the R&R after stating that its reasoning was accurate and thorough as a whole, denied Sears's objections to the R&R, and granted summary judgment in favor of the prison officials.

On appeal, Sears argues that the court erred in granting summary judgment on his excessive force claims because his sworn statements created a genuine dispute as to whether the prison officials used excessive force against him.[3] He also argues that the court erred in crediting the prison officials' version of events

---

[3] If Sears is correct that there is a genuine dispute as to whether his Eighth Amendment rights were violated, then the district court's determination that the prison officials were entitled to qualified immunity necessarily would be undermined. *See Fennell v. Gilstrap*, 559 F.3d 1212, 1216-17 (11th Cir. 2009).

over his own in the absence of undisputed evidence because "swearing contests" are matters to be resolved by a jury. In addition, he asserts that the court incorrectly required proof that he suffered more than a de minimis injury and erroneously concluded that he could not succeed on his excessive force claim as a result. Finally, Sears contends that there is a genuine dispute as to whether the prison officials were deliberately indifferent to his need for medical treatment for the serious injuries that he sustained following the alleged use-of-force incidents.

## II. DISCUSSION

We review a district court's grant of summary judgment de novo, applying the same legal standards used by the district court. *Kingsland v. City of Miami*, 382 F.3d 1220, 1225 (11th Cir. 2004). Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Id.* at 1225-26. A genuine dispute exists only if a reasonable fact-finder could find that the plaintiff is entitled to a verdict by a preponderance of the evidence. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012). Unsupported factual allegations, affidavits based on information and belief instead of personal knowledge, and mere conclusions are insufficient to withstand a motion for summary judgment. *Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005). A non-conclusory affidavit that complies with Federal Rule of Civil Procedure 56 can create a genuine dispute concerning an

7

issue of material fact, even if it is self-serving and/or uncorroborated. *United States v. Stein*, 881 F.3d 853, 858-59 (11th Cir. 2018) (en banc).

We view all evidence and factual inferences in the light most favorable to the non-moving party and resolve all reasonable doubts in favor of the non-moving party. *Kingsland*, 382 F.3d at 1226. It is inappropriate for the district court to make credibility determinations or to weigh the evidence at the summary judgment stage. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, where the non-movant relies upon implausible inferences drawn from that evidence, summary judgment is appropriate. *Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 970 (11th Cir. 2002). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Where a party's version of events is directly contradicted by video evidence, courts are to accept the video's depiction of events. *Id.*

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007)

8

(quotation marks omitted) (quoting *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003)).  Where it is undisputed that an official is acting within their discretionary authority, the burden shifts to the plaintiff to demonstrate that (1) the officer violated a constitutional right and (2) the right was clearly established at the time of the incident.  *Id.* at 1202-03, 1203 n.2.  However, a plaintiff alleging excessive force can overcome a qualified immunity defense by showing that their Eighth Amendment rights have been violated without regard to whether the rights were clearly established.  *Fennell v. Gilstrap*, 559 F.3d 1212, 1216-17 (11th Cir. 2009).

## A. Excessive Force

The district court erred in granting summary judgment in favor of the prison officials on Sears's excessive force claims arising out of the August 2015 and January 2016 incidents.  The Eighth Amendment "prohibits the unnecessary and wanton infliction of pain." *Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th Cir. 2010) (quotation marks omitted).  In determining whether prison officials are entitled to summary judgment in the context of an excessive force claim, courts must determine whether the evidence goes beyond the mere reasonableness of a given use of force.  *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999).  Instead, courts must determine whether the evidence, when viewed in the light

most favorable to the non-moving party, supports a reasonable interference that the prison official acted wantonly in inflicting the pain.  *Id.*

In the prison context, an excessive force claim requires a plaintiff to show an objective injury "sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities and a subjective showing that the official had a sufficiently culpable state of mind."  *Thomas*, 614 F.3d at 1304 (quotation marks omitted).  Both inquiries are contextual, and the objective harm inquiry is responsive to contemporary standards of decency.  *Id.*  While not every "malevolent touch" by a prison guard amounts to excessive force, a de minimis use of force is cognizable under the Eighth Amendment if it is "repugnant to the conscience of mankind."  *See Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (quotation marks omitted).  While a plaintiff complaining about a given push or shove almost certainly fails to state a valid excessive force claim where no discernible injury occurs, "an inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  *Id.* at 38.

For the subjective intent prong for excessive force claims, a plaintiff must show that the defendant(s) applied force maliciously and sadistically for the purpose of causing harm.  *Id.*  "Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied in a good faith effort to

maintain or restore discipline and not maliciously and sadistically to cause harm." *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quotation marks and brackets omitted).  In determining whether force was applied maliciously or sadistically, we consider several factors, including (1) the need to apply force, (2) the relationship between that need and the amount of force applied, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of the forceful response.  *Id.*  Where prison officials maliciously and sadistically apply force to cause harm, contemporary standards of decency are always violated, even in the absence of significant injury.  *Wilkins*, 559 U.S. at 37.  However, the absence of injury is only one factor to be considered in determining whether the force applied was plausibly thought necessary.  *Id.*  The absence of injury also is some indication of the amount of force applied.  *Id.*  Once the need for force ceases, any continued application of harmful force can constitute an Eighth Amendment violation.  *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991).

### 1. The August 2015 Incident

As noted by the magistrate judge in the R&R, the parties swore to diametrically opposed versions of events surrounding the August 2015 incident. Sears alleged that Thomas slammed him into a wall after Thomas escorted him to the office, but Thomas claimed that they never went to the office.  Similarly, Sears

11

claimed to have been punched in the face and assaulted for 13 minutes by Thomas, Villalpando, and several other officers; Thomas and Villalpando stated that no such abuse occurred. Those warring affidavits speak directly to the issue of the use of excessive force and the subsequent medical treatment that Sears would have needed to treat the injuries sustained as a result of that excessive force. Therefore, assuming that Sears's allegations were true, there was a genuine dispute as to the material facts when only the affidavits are considered; a reasonable fact-finder could have found that the prison officials used excessive force if the fact-finder found Sears to be more credible than the prison officials. *Kernel Records Oy*, 694 F.3d at 1300.

Recognizing this, the district court relied on the medical records from the day of the incident and Nurse Sapp's sworn statement that Sears had no visible injuries of any kind to conclude that Sears's story was implausible. The court noted Nurse Sapp found no injuries consistent with Sears's claim that he was assaulted by several officers over a period of 13 minutes. Further, the court stated Sears himself conceded he had no visible injuries after Thomas allegedly slammed him into a wall. Finally, the court noted the record did not contain any evidence that Sears had requested medical care for the injuries he allegedly received.

If the medical records were unchallenged, the court would have been correct that they rendered his allegations implausible. *Scott*, 550 U.S. at 380; *Cuesta*, 285

12

F.3d at 970. However, the medical evidence (or lack thereof) that the court relied on here was not uncontroverted, as demonstrated by Sears's objections to the R&R. Thus, it was error for the court to conclude that Sears's claims were implausible in light of those records. *Scott*, 550 U.S. at 380.

Sears testified that Thomas did not allow Nurse Sapp to document his injuries, which calls into question the contents of Nurse Sapp's report. Further, the district court's reliance on the absence of requests for medical care by Sears was misplaced because one would not expect to find medical records from a period of time in which a person swears that they were systematically denied medical treatment. Although Nurse Sapp is not a party to this litigation, she was employed at the same facility as the named defendants at the time she made the report on which the district court relied. To the extent a medical report can be considered "objective," her report was not akin to one from a neutral medical provider because she had an employment relationship with the facility whose officials were being sued. Thus, given that relationship, it is questionable whether the district court could rely on Nurse Sapp's report as objective evidence that contradicted Sears's sworn statements. *Reeves*, 530 U.S. at 150.

Finally, the medical records here are not the same as the "incontrovertible" video evidence that courts must accept over contradictory sworn statements, since those records involve people and all their attendant mental infirmities, biases, and

13

limitations-in their creation. *See Scott*, 550 U.S. at 380. Construing the facts and all reasonable inferences in a light most favorable to Sears, a reasonable fact-finder could find that Thomas and Villalpando used excessive force against Sears and then concealed Sears's resulting injuries by ordering Nurse Sapp not to record those injuries in her report. Accordingly, it was error for the court to grant summary judgment in favor of the prison officials on Sears's excessive force claims because the self-serving nature of Sears's sworn statements do not preclude those statements from creating a genuine dispute of material fact, and there is no uncontroverted objective evidence rendering his account implausible. *Kingsland*, 382 F.3d at 1226; *Stein*, 881 F.3d at 858-59; *Campbell*, 169 F.3d at 1375.

### 2. January 2016 Incident

Unlike the August 2015 incident, there were no medical reports in the record from the post-incident examination Thomas asserted that Sears received. Further, Sears stated that no such examination occurred and he was taken directly to confinement, after which he was denied medical care for at least 12 days, directly contradicting Thomas's sworn statements. The magistrate judge also erred by stating that it was "equally plausible" that the injuries Sears alleged he was diagnosed with following the incident-bruised ribs and sprained shoulder rotary cups-may have been the result of some other event. That conclusion requires an impermissible inference in the prison officials' favor, insofar as there is no

14

evidence to suggest that Sears received those injuries from an unrelated event. *Kingsland*, 382 F.3d at 1226. Sears's alleged diagnosis of bruised ribs and sprained shoulder rotary cuffs also contradicted Dr. Maier's sworn statement that there was no objective medical evidence supporting Sears's claims, which created a genuine dispute about whether Sears sustained his alleged injuries. *Stein*, 881 F.3d at 858-59. The court also appears to have made impermissible credibility determinations, insofar as it stated that Sears's account of events was implausible "[g]iven the *credible*, uncontroverted evidence submitted by the [prison officials]." The court similarly gave weight to the fact that Sears's sworn statements were not corroborated, while those of the prison officials were, but corroboration alone is insufficient to warrant summary judgment because a party's statements may be self-serving so long as they give rise to a genuine dispute. *Id.*; *Kingsland*, 382 F.3d at 1225-26.

Assuming Sears's sworn statements are true, as the district court was required to do, Thomas and Quinones dragged Sears for approximately 65 meters over a period of 23 minutes using a modified take-down technique, thereby causing Sears extreme pain and exposing his genitals and buttocks in the process. *Kingsland*, 382 F.3d at 1226. Further, Brown tightened Sears's handcuffs after he complained that they were too tight to make the handcuffs cut into his skin. Based on those sworn statements, a reasonable fact-finder could find that Thomas,

Quinones, and Brown maliciously and sadistically applied force to Sears to harm him and cause him pain, rather than to maintain control, because Sears was restrained at the time. *Skrtich*, 280 F.3d at 1300; *Kernel Records Oy*, 694 F.3d at 1300. Further, that alleged conduct could amount to a constitutional violation even if Sears did not suffer significant injury as a result, though the absence of significant injury may weigh against a finding that the prison officials acted with the requisite malice. *Wilkins*, 559 U.S. at 37. Therefore, the district court erred in granting summary judgment in favor of Thomas, Quinones, and Brown on the excessive force claims stemming from the January 2016 incident because Sears's sworn statements were not contradicted by objective evidence that rendered his account implausible, the court was required to accept those statements as true, and the absence of serious injury did not preclude a determination that the prison officials maliciously applied force to him. *See Wilkins*, 559 U.S. at 37; *Kingsland*, 382 F.3d at 1226; *Cuesta*, 285 F.3d at 970; *Campbell*, 169 F.3d at 1375.

**B. Deliberate Indifference Claims**

The district court did not err in granting summary judgment in favor of Thomas and Villalpando on the related deliberate indifference claims. Deliberate indifference to a prisoner's serious medical needs constitutes a violation of the Eighth Amendment. *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999). To state a claim for deliberate indifference, a prisoner must show "(1) subjective

16

knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Id.* at 1255. Summary judgment for the defendant(s) is appropriate where the plaintiff fails to present evidence supporting a finding that the defendant(s) had a subjective awareness of the relevant risk. *Id.* An official acts with deliberate indifference where he or she knows that an inmate is in need of serious medical care but fails or refuses to obtain medical care for the inmate. *Id.* A prison official may act with deliberate indifference by delaying treatment for serious medical needs, though the reason for the delay and the nature of the medical need are relevant in determining whether the delay constituted a constitutional violation. *Id.* Grossly inadequate care, cursory care for obvious medical needs, or less efficacious care given because it is "easier" can also violate the Eighth Amendment. *Id.*

Regarding the August 2015 incident, Sears asserted in a conclusory manner that he systematically was denied medical care by another prison official, but he did not provide evidence showing that Thomas and Villalpando knew that he was at a significant risk of harm or that they delayed or denied his access to medical care in any way. Further, mere conclusory statements are insufficient to create a genuine dispute, and Sears himself conceded that he did not speak to Thomas or Villalpando while he was in confinement following the incident. *Ellis*, 432 F.3d at 1327. Therefore, no reasonable fact-finder could have found that Thomas or

17

Villalpando deliberately ignored his medical needs, as there is no evidence that either official was personally aware that Sears was allegedly seeking medical attention. *Kernel Records Oy*, 694 F.3d at 1300. Accordingly, the district court did not err in granting summary judgment on Sears's deliberate indifference claims against Thomas and Villalpando stemming from the August 2015 incident.

Regarding Sears's deliberate indifference to medical needs claims for the January 2016 incident, the absence of medical records indicating that Sears sought treatment for the injuries he allegedly sustained supported his sworn statements that he was deliberately denied medical care when reasonable inferences are made in his favor. Sears swore that he was denied medical care for at least 12 days following the January 2016 incident, which is consistent with a lack of requests for medical treatment if the prison officials did not respond to his request for sick call because they were systematically denying him medical care. However, to succeed on his deliberate indifference claims, Sears was required to show that he suffered from serious medical needs *and* the prison officials deliberately delayed or denied his access to medical care for those needs. *McElligott*, 182 F.3d at 1255. While Sears swore that he suffered serious injuries during the January 2016 incident, he admitted that he had no contact with Thomas, Quinones, or Brown after he was taken to confinement in connection with his alleged medical needs.

18

Further, assuming that Sears was denied medical care by prison officials, there is no evidence that Thomas, Quinones, and Brown were the officials who deliberately denied him treatment.  Thus, a reasonable fact-finder could not find that Thomas, Quinones, and Brown *deliberately* delayed or denied him access to medical care for reasons that amounted to more than negligence, as he admits that he never made his medical needs known to them.  *Kernel Records Oy*, 694 F.3d at 1300.  Therefore, the district court did not err in granting summary judgment in favor of those prison officials on Sears's deliberate indifference claims stemming from the January 2016 incident.

Because the law controlling motions for summary judgments does not allow judges to decide which version of plausible conflicting descriptions of incidents is more credible,[4] we reverse the summary judgment with respect to the excessive force claims.  Finding a lack of record support, we affirm the summary judgment dealing with the deliberate indifference claims.

**REVERSED AND REMANDED IN PART, AFFIRMED IN PART.**

---

[4] *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .").