[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14625
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-20884-UU

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ESTELLE STEIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 23, 2019)

Before WILLIAM PRYOR, JULIE CARNES and BRANCH, Circuit Judges.

PER CURIAM:

This appeal is the second occasion we have reviewed whether Estelle Stein's

affidavit constituted substantial evidence that could defeat summary judgment in

an action to reduce federal income tax assessments to judgment. In Stein's first appeal, we initially affirmed on the ground her affidavit failed to create a material factual dispute about the validity of the assessments because, under *Mays v. United States*, 763 F.2d 1295, 1297 (11th Cir. 1985), her "general and self-serving assertions" failed to rebut the presumption of correctness given the assessments, *United States v. Stein*, 840 F.3d 1355, 1357 (11th Cir. 2016), but later we granted Stein's petition for rehearing *en banc*, overruled *Mays* to the extent it outlawed self-serving affidavits, *United States v. Stein*, 881 F.3d 853, 856–59 (11th Cir. 2018), and remanded the case to the district court, *United States v. Stein*, 889 F.3d 1200, 1202 (11th Cir. 2018). In this second appeal, Stein argues that her affidavit is specific, relevant, and detailed enough to preclude summary judgment and that the district court on remand violated Federal Rule of Civil Procedure 56 and her right to due process under the Fifth Amendment. We affirm.

## I. BACKGROUND

The history of this case is well-documented in our earlier published opinions. We describe only the facts pertinent to the issues in this appeal.

The government moved for summary judgment in its action to reduce to judgment assessments against Stein on five federal tax returns that she filed late. The government assessed Stein penalties for the late filings and late payments of her income taxes for 1996, 1999, and 2000, and penalties and interest for her

failure to pay, late filing, and late payment of her income taxes for 2001 and 2002. The government submitted copies of Stein's federal tax returns, transcripts of her tax accounts for 1996 and 1999 through 2002, and an affidavit from Officer Michael Brewer of the Internal Revenue Service to establish that Stein had outstanding tax assessments.

Stein opposed summary judgment and submitted an affidavit as evidence that the assessments were erroneous. Stein averred that the Internal Revenue Service had acknowledged having misapplied her tax payment for 1996 to tax year 1979 and that she had paid the taxes due and a late penalty for each of her tax returns. The relevant paragraphs of her affidavit stated as follows:

> 8. For 1996, this tax return was filed on November 15, 2004. The IRS had no record of receiving any payment and is claiming that full amount of the tax is due, along with interest and penalties.
>
> 9. Subsequently, the IRS admitted to having received my check, but we later learned that it was misapplied to 1979, a closed and paid year.
>
> 10. For the year 1999, I filed the return as surviving spouse on February 11, 2005. This return showed an amount due of $33,612. I paid $35,226, which included the late penalty. The IRS has a record of that payment.
>
> 11. For the year 2000, I filed my return as surviving spouse on January 11, 2005. The amount due on the return was $4,127. I paid $4,349.00, which amount included the late penalty. The IRS has a record of having received that payment.
>
> 12. For the year 2001, I filed my return, as surviving spouse, on March 10, 2005. The amount on the return shows $15,998 due.

3

Although I recall paying the tax on that return, including a late penalty consistent with the other returns that I filed, the IRS does not have a record of receiving such payment.

13. For the year 2002, I filed my return on March 10, 2005, as surviving spouse. The amount of tax shown on the return was $52,342. Although I recall writing a check for this amount, plus, late penalties, the IRS has no record of receiving this amount.

. . .

17. The only record I could find, by sheer coincidence, was a check stub dated November 2004, for the exact amount of the tax due for 1996, which, apparently, the check previously attached to said stub was mailed with the 1996 tax return, similar to each of the tax returns in question.

18. I showed this tax stub to Mr. Michael Brewer, Revenue Office[r] with the IRS. After [he] did some research, he then confirmed that the IRS had, in fact, received the check for the 1996 tax year. . . ([In] [t]he handwritten notes . . . he agreed to correctly apply this missing payment to the 1996 tax year and calculated and credited accrued interest to 2015.)

. . .

21. Notwithstanding the IRS' objective in pursuing this claim to foreclose on my home, it is my unwavering contention that I paid the taxes due, including late filing penalties, at such time as I filed the returns for each of the tax years in question.

On remand, the district court ordered the government to "file a new motion for summary judgment" that addressed "ONLY . . . [whether her] *self-serving affidavit create*[*s*] *a genuine issue of material fact about* [her] *tax liability*" and Stein to "address ONLY the same question." The district court based its order on our decision "[*e*]*n banc*, . . . [that] overruled *Mays*, . . . [our] conclu[sion] that 'a

4

non-conclusory affidavit which complies with Federal Rule of Civil Procedure 56 can create a genuine dispute concerning an issue of material fact, even if it is self-serving and/or corroborated,'" and our statement "that 'a self-serving and/or uncorroborated affidavit will not always preclude summary judgment . . . ." (Alterations adopted.) The district court also mentioned that we had "declined to decide whether 'substantive federal tax law' require[d] corroboration of a taxpayer's affidavit." The district court prohibited the parties from "engag[ing] in further discovery, . . . supplement[ing] the record, or otherwise . . . mak[ing] new arguments which they could have made when [the government] moved for summary judgment the first time."

The government moved for summary judgment on the ground that Stein's affidavit failed to create a material factual dispute that she had paid her tax debts. The government argued that, to rebut the presumption of correctness of its assessment, Stein had to present documentary evidence that the Service received her tax payments. The government also argued that Stein's "general rather than specific" allegations failed to create a genuine factual dispute that she had paid her tax debts.

The government attached to its motion current transcripts of Stein's accounts for tax years 1996 and 1999 through 2002 and an affidavit from Revenue Officer Brewer stating that he had revised the assessment against Stein for tax year 1996

5

and that he had updated Stein's assessments for tax years 1999 through 2002. The transcripts reflected that, for tax year 1996, Stein paid income taxes of $548 yet owed a late-filing penalty of $123.30, a late-payment penalty of $137, and accrued interest of $486.72, and that, for tax year 1999, she paid income taxes of $33,612 and an estimated penalty of $1,614 yet owed a late-filing penalty of $7,562.70, a late-payment penalty of $8,403, and accrued interest of $52,734.23. The transcripts also reflected that, for tax year 2000, Stein paid income taxes of $4,127 and an estimated penalty of $222 yet owed a late-filing penalty of $928.57, a late-payment penalty of $949.46, and accrued interest of $1,178.46. Additionally, the transcripts reflected that Stein reported, but failed to pay, income taxes and estimated penalties of $16,631 for tax year 2001 and of $52,342 for tax year 2002.

Stein opposed summary judgment. She argued that, with "*Mays* overruled, there is absolutely no justification under substantive federal tax law or otherwise . . . [that] required . . . corroborat[ion]" of her averments that she had paid her taxes and that her affidavit "create[d] a genuine issue of material fact concerning [her] payment of her tax liability." In a footnote, Stein complained that the government had "file[d] a new affidavit" and had made a "new argument" that her affidavit was "insufficient since it fails to assert that her payment was 'delivered'" in "violat[ion] [of] the Court's July 2, 2018 Order." Stein argued that, "[i]f supplemental affidavits were permitted, then certainly [she] could clarify her

6

testimony in opposition to the Government's newly filed Motion for Summary Judgment," and she "request[ed] permission to file a supplemental affidavit." Stein also argued that she defeated summary judgment even "if the Court considers this new argument without . . . [her] having an opportunity to supplement her affidavit or file an additional affidavit" because she "attested that she mailed her check for payment together with the filing of each of her tax returns" and she was entitled to "a presumption of receipt of properly mailed documents . . . ."

The district court granted summary judgment in favor of the government. The district court ruled that "a taxpayer needs to show that they paid the taxes assessed" and that "the IRS *actually* received the funds in question" to rebut the presumption of correctness given an assessment. The district court determined that "Stein's affidavit [was] insufficient to create [a] genuine dispute of material fact" because it was "speculative; based on nothing more than 'the best of her recollection.'" The district court ruled that summary judgment was appropriate because Stein "offered nothing else to counter the government's evidence" to "show that the government was paid and that the assessment . . . is incorrect."

## II. STANDARD OF REVIEW

We review *de novo* a summary judgment. *United States v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006). Summary judgment is appropriate if "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a).

### III. DISCUSSION

Stein had to satisfy a well-established standard to defeat the motion of the

government for summary judgment. Because the evidence submitted by the

government created a presumption that its tax assessments were correct, Stein had

to prove that the assessments were erroneous. *See White*, 466 F.3d at 1248–49. She

had to produce "significant probative evidence," *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 249 (1986), to create a "genuine issue as to any material fact" that

she had paid her tax debts, *id.* at 250. Her evidence had to be more than "merely

colorable," *id.* at 249; it had to be of sufficient quality and weight "that a

reasonable jury could return a verdict" in her favor, *id.* at 248.

The affidavit that Stein submitted as evidence that the assessments were

erroneous had to satisfy certain criteria. Her affidavit had to "made on personal

knowledge." Fed. R. Civ. P. 56(c)(4). The affidavit had to contain statements that

Stein knew, as opposed to subjectively believed, that "a certain fact exist[ed] . . .

[to] creat[e] a genuine issue of fact about the existence of that certain fact." *Pace v.*

*Capobianco*, 283 F.3d 1275, 1278–79 (11th Cir. 2002); *see Ellis v. England*, 432

F.3d 1321, 1326 (11th Cir. 2005). Stein's affidavit also had to "set out facts that

would be admissible in evidence." Fed. R. Civ. P. 56(c)(4); *see Gossett v. Du-Ra-*

*Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978) (stating that "opposing affidavits [must] set[] forth specific facts to show why there [was] an issue for trial"). The affidavit had to consist of facts, not "conclusory allegations . . . [, which] have no probative value." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

Stein's affidavit failed to create an issue of fact about the validity of the assessments. Several of Stein's averments did not conform to Rule 56(c)(4). Stein's averments that she had an "unwavering contention that" and believed "to the best of [her] recollection" that she had paid all her taxes and late penalties conveyed her subjective belief, not personal knowledge, that she had satisfied her tax debts. *See Jameson v. Jameson*, 176 F.2d 58, 60 (D.C. Cir. 1949) ("Belief, no matter how sincere, is not equivalent to knowledge.") (cited in *Pace*, 283 F.3d at 1279). Her averment that she recalled paying her income tax and penalty for tax year 2001 had no probative value because she failed to support it with any facts about the time, place, or form of her payment. *See Evers*, 770 F.2d at 986. And Stein remaining averments did not dispute her tax debts. With respect to the 1996 tax year, Stein's averments that she filed her tax return "on November 15, 2004," and that her "check stub . . . [reflected payment] for the exact amount of the tax due" confirmed, rather than contested, that she still owed accrued interest and late-filing and late-payment penalties for that tax year. Stein's averment that she paid her income taxes and estimated penalties for tax years 1999 and 2000 did not

9

address the validity of the related assessments for accrued interest and penalties imposed for the late filing and the late payment of her taxes. As to tax year 2002, Stein recalled "writing a check" for income taxes and penalties, yet she did not state that she delivered the check, so no dispute existed that she owed assessments for failing to pay, for paying and filing late, and for accrued interest.

Stein produced no substantial competent evidence to defeat summary judgment. Viewed in the light most favorable to Stein, her affidavit provided "a scintilla of evidence," which is not enough to survive summary judgment. *See Liberty Lobby*, 477 U.S. at 252. And Stein failed to submit any other evidence to support her assertion that the tax assessment was erroneous. *See* Fed. R. Civ. P. 56(c)(1). Without the existence of a "genuine dispute as to any material fact . . . [the government was] entitled to judgment as a matter of law." *See id.* R. 56(a).

Stein argues that the district court on remand violated Federal Rule of Civil Procedure 56 and her right to due process under the Fifth Amendment, but we disagree. Stein argues that she was improperly "limited [in] what arguments [she] could assert," but the district court appropriately limited the parties' arguments based on our instruction to "determin[e] the impact of Ms. Stein's affidavit" on the motion of the government for summary judgment, *Stein*, 881 F.3d at 859. Stein argues that the district court violated Rule 56 by prohibiting her from filing new evidence in opposition to summary judgment, but Rule 56 does not address the

10

supplementation of the record on remand. Furthermore, the admission of evidence is a matter of discretion, and Stein fails to explain why it was inappropriate for the district court to refuse to admit new evidence. *See Cambridge Univ. Press v. Albert*, 906 F.3d 1290, 1302 (11th Cir. 2018) ("The question whether to reopen the record on remand is 'left to the sound discretion of the trial court.' *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 551, 103 S. Ct. 2541, 76 L.Ed.2d 768 (1983)."). And we find unpersuasive Stein's conclusory argument that the district court violated her right to due process by denying her an opportunity to file a new affidavit. Stein fails to state what facts she would have included in the affidavit or how she was prejudiced by the inability to file a new affidavit.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of the government.

11