**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 25-11193

Non-Argument Calendar

————————————————

WENDALL JERMAINE HALL,

Plaintiff-Appellant,

versus

VALAIRE,
  Nurse,
MARIA GARDNER,
  Nurse,
BLANDEN,
  Nurse,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:23-cv-00769-SPC-NPM

————————————————

Before JORDAN, KIDD, and ANDERSON, Circuit Judges.

PER CURIAM:

Wendall Hall, an involuntarily committed resident of Florida Civil Commitment Center ("FCCC"), appeals pro se from the district court's order granting the motion for summary judgment filed by Antoria Blanding, Beatrix Valere, and Maria Gardiner (collectively, "the defendants" or "the nurses")[1] on Hall's deliberate indifference, conditions of confinement, and retaliation claims. On appeal, Hall argues that there was a genuine issue of material fact about whether the nurses purposely delayed his cystoscopy, whether he had an opportunity to dispose of his used catheters, and whether there was a legitimate basis for Gardiner's incident report against him.

## I. DISCUSSION

*A. Delayed Cystoscopy*

We review a district court's order granting summary judgment de novo, construing all evidence and drawing all reasonable inferences in favor of the non-movant. *Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990). Summary judgment is appropriate when the record evidence "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the district "court must draw all reasonable inferences in favor of the nonmoving party" and may not weigh the evidence

---

[1] Hall misspelled each of the Defendants' names. We refer to them by their proper names.

or make credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To show that there is no genuine dispute of material fact, the movant must show that no facts affect the outcome of the case that would lead a rational trier of fact to find for the non-movant. *Harrison v. Culliver*, 746 F.3d 1288, 1297-98 (11th Cir. 2014). If the movant makes that showing, the burden shifts to the non-movant to show the existence of a genuine dispute as to a material fact. *Fitzpatrick v. City of Atl.*, 2 F.3d 1112, 1116 (11th Cir. 1993). Although pro se pleadings are liberally construed, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown*, 906 F.2d at 670. "[T]he nonmoving party may not rely solely on the pleadings" to defeat a motion for summary judgment, but rather, must rely on "affidavits, depositions, answers to interrogatories, and admissions" to "show that there are specific facts demonstrating that there is a genuine issue for trial." *Id.*; *see* Fed. R. Civ. P. 56(c).

Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, "mere conclusions and unsupported factual allegations, as well as affidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for

summary judgment." *Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005). When the two parties tell "different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Nonetheless, "[a] non-conclusory affidavit which complies with Rule 56 can create a genuine dispute concerning an issue of material fact, even if it is self-serving and/or uncorroborated." *United States v. Stein*, 881 F.3d 853, 858-59 (11th Cir. 2018). A "plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." *Sears v. Roberts*, 922 F.3d 1199, 1208 (11th Cir. 2019) (citation modified). Otherwise, a plaintiff's self-serving testimony based on personal knowledge that contradicts another's account "presents a classic swearing match, which is the stuff of which jury trials are made." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013).

We may affirm the district court on any legal basis, "regardless of the grounds addressed and relied upon by the district court." *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004).

Section 1983 provides a cause of action for private citizens against persons acting under color of state law for violating their

constitutional rights and other federal laws. 42 U.S.C. § 1983. The Due Process Clause of the Fourteenth Amendment states that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "This Clause applies to civilly committed detainees . . . who bring § 1983 actions." *Bilal v. Geo Care LLC*, 981 F.3d 903, 911 (2020). "Under the Fourteenth Amendment, those who are civilly committed enjoy a substantive-due-process right to liberty interests in, among other things, safety and freedom from bodily restraint," but this right is not absolute. *Id.* at 912. We "apply a balancing test to determine whether a State's restraints on a civilly committed person violate that individual's substantive-due-process rights[,] . . . balanc[ing] the person's liberty interests against the reasons the State sets forth for restricting the individual's liberty." *Id.* Further, the civilly committed are due a higher standard of care than prisoners because the "conditions of confinement for the criminally committed are designed to punish," while "those of the civilly committed are not." *Id.* (citation modified). Accordingly, the Fourteenth Amendment substantive due process rights of civil detainees "are at least equivalent to the comparable Eighth Amendment rights of those incarcerated," and, thus, Eighth Amendment case law is relevant. *Id.* at 915.

In *Youngberg v. Romeo*, the Supreme Court addressed a 42 U.S.C. § 1983 claim alleging three constitutional violations brought by Romeo, an individual in involuntary civil commitment with "the mental capacity of an 18-month-old child." 457 U.S. 307, 309-10 (1982). The Supreme Court recharacterized Romeo's

claims as claims "to safe conditions," "to freedom from bodily restraint," and to "minimally adequate or reasonable training to ensure safety and freedom from undue restraint." *Id.* at 309, 314-19. Ultimately, the Supreme Court remanded the case because the "jury was erroneously instructed on the assumption that the proper standard of liability was that of the Eighth Amendment['s]" deliberate indifference standard, leading to a finding for the defendants, when the Fourteenth Amendment's higher standard applied. *Id.* at 312, 320-24. The Supreme Court held that civilly committed individuals, like Romeo, "retain[] liberty interests in safety and freedom from bodily restraint," but "these interests are not absolute," as they must be balanced against the State's interests. *Id.* at 309, 319-21. "[T]he proper balance between the legitimate interests of the State and the rights of the involuntarily committed to reasonable conditions of safety and freedom from unreasonable restraints . . . [is] that the courts make certain that professional judgment in fact was exercised." *Id.* at 321.

Under this professional judgment standard, there is a presumption of validity to any decision made by a professional, meaning any "person competent, whether by education, training or experience, to make the particular decision at issue," and applying this deferential standard, should minimize judicial interference "with the internal operations of these institutions." *Id.* at 322-23, 323 n.30. However, liability can still be imposed under this standard, but "only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible

actually did not base the decision on such a judgment." *Id.* at 323. The Supreme Court emphasized that civil detainees "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Id.* at 321-22.

More recently, in *Bilal*, a civilly committed sex offender at FCCC, Bilal, appealed to this Court the district court's dismissal of his § 1983 action for failure to state a claim. 981 F.3d at 907-08, 910. Bilal asserted that his Fourteenth Amendment due process rights were violated based on: (1) his conditions of restraint and confinement during a 1200-mile roundtrip journey; and (2) his stay in the county jail. *Id.* at 907-09. We noted that the Fourteenth Amendment "applies to civilly committed detainees like Bilal, who bring § 1983 actions." *Id.* at 911. Further, "[u]nder the Fourteenth Amendment, those who are civilly committed enjoy a substantive-due-process right to liberty interests in, among other things, safety and freedom from bodily restraint," but this interest is balanced against the State's interests. *Id.* at 912. Specifically, "[o]nce the State articulates a legitimate reason for restraining the civil committee's liberty, 'the Constitution only requires that the courts make certain that professional judgment in fact was exercised' in the times and way the institution restrains the person's liberty." *Id.* (quoting *Romeo*, 457 U.S. at 321). After further summarizing the professional judgment standard from *Romeo*, we stated that Florida's interest in keeping the public safe from violent sexual predators is a legitimate state interest, so the next step was to consider whether "each of the practices Bilal experienced in the

name of this interest during his" roundtrip to and his stay in the county jail were "inconsistent with professional judgment." *Id.*

Additionally, in finding that Bilal stated a claim under the Fourteenth Amendment, we relied heavily on *Brooks v. Warden*, 800 F.3d 1295 (11th Cir. 2015), which held that a prisoner's conditions of confinement violated the Eighth Amendment when he was required to sit in his own excrement for two days. *Id.* at 914-15. We stated that "Fourteenth Amendment substantive-due-process rights are at least equivalent to the comparable Eighth Amendment rights of those incarcerated." *Id.* at 915 (citing *Dolihite v. Maughon*, 74 F.3d 1027, 1041 (11th Cir. 1996)). The "relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed," and that when a conditions-of-confinement violation occurs under the Eighth Amendment, the same conditions would "undoubtedly violate the higher standard owed to civil committees under the Fourteenth Amendment." *Id.* (citation modified).

We have explicitly noted that courts should apply the professional judgment standard when analyzing a civilly committed detainee's Fourteenth Amendment claim, rather than the deliberate-indifference standard. *See Rodgers v. Horsley*, 39 F.3d 308, 311 n.3 (11th Cir. 1994). Specifically, in *Rodgers v. Horsley*, the defendants appealed the district court's denial of their motion for summary judgment on a § 1983 claim of an involuntarily civilly committed individual, who claimed that she was not provided with "adequate security" at the institution where she was raped. 39 F.3d

at 309-10.  Most of the opinion deals with the defendants' qualified immunity defense, noting that while *Romeo* clearly establishes "that an involuntarily committed patient has a constitutionally protected right to reasonably safe conditions of confinement[,] . . . for purposes of qualified immunity analysis this right is far too general." *Id.* at 311.  Nevertheless, we noted that "the deferential 'professional judgment' standard" was the proper standard to apply to the civil detainee, citing Third and Tenth Circuit cases which distinguished that the "professional judgment standard rather than the Eighth Amendment deliberate indifference standard" should be used.  *Id.* at 311 n.3 (quoting *Romeo*, 457 U.S. at 321-22).

The Eighth Amendment governs the conditions under which prisoners are confined and the treatment that they receive in prison. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Accordingly, the Eighth Amendment imposes duties on prison officials, who "must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Id.*  "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation modified).  To establish a claim of deliberate indifference, a plaintiff must first, as a threshold matter, show that he suffered an "objectively, sufficiently serious" deprivation. *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc) (citation modified).  The objective showing requires a demonstration of "a substantial risk of serious harm" to the plaintiff.  *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) (citation modified) (addressing pretrial detainees' Fourteenth

Amendment claims via the same test as Eighth Amendment claims). Second, the plaintiff must show "that the defendant acted with subjective recklessness as used in the criminal law," showing "that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Wade*, 106 F.4th at 1262 (citation modified). If the defendant actually knew about a substantial risk to the inmate, he did not act with deliberate indifference if he reasonably responded to that risk. *Id.*

Here, under both the professional judgment standard, advocated by Hall, and the deliberate indifference standard, applied by the district court, Hall failed to create a genuine issue of material fact that would make the grant of summary judgment to the nurses improper because his evidence did not refute that the delay in his treatment was caused by the availability of the medical specialists.

Applying the professional judgment standard, first, the nurses' legitimate reason for the delay in Hall's cystoscopy was the availability of the outside urology specialist. *Bilal*, 981 F.3d at 912. Next, Hall failed to properly allege how the nurses' actions departed from accepted professional judgment beyond conclusively stating that they purposely delayed his cystoscopy. *Bilal*, 981 F.3d at 912. Nor did the nurses fall below sound professional judgment because Hall's evidence shows that the nurses responded to his sick call requests and grievances and issued him medication, and the nurses provided evidence that FCCC placed an order for his cystoscopy. *Bilal*, 981 F.3d at 912.

Moreover, the district court did not weigh the nurses' evidence more favorably than Hall's evidence because he did not provide any evidence that the nurses purposely delayed his cystoscopy appointment. *Bilal*, 981 F.3d at 912.

Furthermore, the district court did not err in granting the nurses summary judgment based on its deliberate-indifference analysis. *Wade*, 106 F.4th at 1262. With respect to the objective element of deliberate indifference, there is no genuine issue of material fact about whether there is an objective showing of "a substantial risk of serious harm" because the parties agree that Hall needed a cystoscopy, and the nurses do not dispute that Hall experienced urinary discomfort while he waited for his cystoscopy. *Wade*, 106 F.4th at 1262; *Swain*, 961 F.3d at 1285; *Reeves*, 530 U.S. at 150. As noted by the district court, with respect to the subjective element of deliberate indifference, Hall did not establish a genuine issue of material fact because his evidence did not refute the fact that the delay in his appointment occurred because the doctor did not consider his cystoscopy to be considered an emergency, FCCC prioritized appointments for residents with emergency needs, and the urologists had limited availability. *Wade*, 106 F.4th at 1262. While Hall proved that he placed the nurses on notice of his urinary discomfort, the nurses did not act with deliberate indifference because they issued him medication and followed up with the urologists. *Wade*, 106 F.4th at 1262. Thus, we affirm the district court on this issue.

*B. Disposal of Used Catheters*

In *Bilal*, as stated, we evaluated the civilly committed plaintiff's claims regarding the conditions he was subjected to during transport for whether any of those conditions were "inconsistent with professional judgment" according to a civilly committed person's Fourteenth Amendment due-process interest in "reasonably safe conditions." 981 F.3d at 912, 916. When addressing Bilal's claim that he was forced to sit in his own excrement for 300 miles, we relied on analogous caselaw in the Eighth Amendment conditions-of-confinement context. *Id.* at 914-15. Because caselaw established that refusing to allow a prisoner to use the bathroom for an extended period violated the Eighth Amendment, Bilal, who was civilly committed and thus entitled to "more considerate . . . conditions of confinement," stated a claim for a violation of his Fourteenth Amendment due-process interest in reasonably safe conditions. *Id.* at 916 (quoting *Romeo*, 457 U.S. at 322).

Under the Eighth Amendment, to prevail on a conditions-of-confinement claim, the prisoner must prove: (1) objectively, whether the deprivation is sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities; and (2) subjectively, whether the prison officials had a culpable state of mind. *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010). When analyzing the objective prong, we weigh evolving standards of decency against officials' need to keep the facility safe. *Id.* at 1307. The subjective showing requires that the defendant had subjective knowledge of a risk of harm and disregarded that risk by conduct that was more than negligent. *Id.* at 1312.

Here, under both the professional judgment standard, advocated by Hall, and the deliberate indifference standard, applied by the district court, Hall failed to create a genuine issue of material fact that would make the grant of summary judgment to the nurses improper on the conditions-of-confinement claims because it is undisputed that the nurses provided Hall with an opportunity to dispose of his used catheters.

First, applying the professional judgment standard, there is a genuine dispute about whether the nurses had a legitimate reason to prohibit Hall from disposing of his used catheters in the medical office because Hall's affidavit states that the biohazard team did not pick up his used catheters, that he did not visit the medical office after 5:00 p.m., and that he got staff's permission to visit the office. Though the nurses provided evidence that Herbert (the medical supervisor) did not give Hall permission to visit the medical office, Hall's sworn statements contradict that, and the nurses did not provide evidence that blatantly contradicted Hall's statements that he had permission from staff more generally. *Reeves*, 530 U.S. at 150; *Harris*, 550 U.S. at 380; *Stein*, 881 F.3d at 858-59. However, Hall failed to demonstrate that there was a genuine dispute about whether the nurses' actions departed from accepted professional judgment because the nurses told him that he could request for catheter supplies to be picked up and dropped off. *Bilal*, 981 F.3d at 912. Nor did the nurses fall below sound professional judgment because Hall's evidence shows that he used a sick call request to get more catheter supplies, so the nurses gave him an adequate avenue to dispose of his catheters. *Bilal*, 981 F.3d at 912.

Second, applying the deliberate indifference standard, the district court erred in finding that Hall did not establish a genuine issue of material fact about whether the disposal of his catheters created a substantial risk of harm.  In his affidavit, Hall stated that the biohazard team did not pick up his used catheters, that he had to store them under his bed, and that they were overflowing with blood.  *Bryant*, 614 F.3d at 1304.  The nurses did not provide evidence that blatantly contradicted Hall's statements, thus the district court should have viewed the evidence as Hall presented it. *Reeves*, 530 U.S. at 150; *Harris*, 550 U.S. at 380; *Stein*, 881 F.3d at 858-59.  Moreover, there is a dispute about whether the nurses had a sufficient reason to keep the medical office safe because Hall's affidavit stated that he did not go to the medical office after 5:00 p.m. and that he always got permission from staff.  *Bryant*, 614 F.3d at 1307.

With respect to the subjective element, however, the district court properly found that Hall did not establish a genuine issue of material fact because the nurses reasonably responded to the risk of Hall's catheter disposal by telling him that he could request for catheter supplies to be picked up and dropped off.  *Wade*, 106 F.4th at 1262.  Hall knew he could request additional assistance because he submitted a request for new catheter supplies, and it was fulfilled.  Accordingly, the district court properly granted the nurses' motion for summary judgment because there was not a genuine issue of material fact with respect to the subjective element of Hall's conditions of confinement claim.

*C. Gardiner's Incident Report*

Under the First Amendment, a prison official may not retaliate against an inmate for exercising the right of free speech. *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *see* U.S. Const. amend. I.  An inmate may maintain a cause of action against prison administrators who retaliate against him for making complaints. *Farrow*, 320 F.3d at 1248.  To prevail, the inmate must establish the following elements: (1) his speech was constitutionally protected; (2) the inmate suffered an adverse action, such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there was a causal relationship between the retaliatory action and the protected speech.  *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005).

We have recognized that a detainee's filing of grievances towards his place of confinement is protected speech.  *See Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).  If an adverse action—such as a dorm transfer—is taken by the facility against the detainee in relation to protected speech, we must determine whether a reasonable fact finder would have found that the facility would have transferred the resident even in the absence of protected conduct.  *Id*. at 1278-79.  If the facility would have taken the same action regardless of the protected activity, it is entitled to summary judgment.  *See id*. at 1278.  A prisoner cannot maintain a retaliation claim when he is convicted of the actual behavioral

violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction. *O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011).

Here, Gardiner filed an incident report against Hall for the rule violation of going to the medical office without permission. After being afforded due process in the prison setting, Hall was found guilty of the disciplinary violation. Moreover, both Hall's evidence and that of the nurses demonstrate that Hall did not have the permission he asserted; thus, the evidence demonstrates that Hall's non-speech-related behavior caused Gardiner's incident report, not Hall's prior grievances. Accordingly, Hall's retaliation claim is foreclosed. *Id.* at 1215-16.

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**